**Ruth Page FISHER, Plaintiff-Appellant,**

v.

**UNITED STATES FIDELITY & GUARANTY COMPANY, a corporation, Defendant-Appellee.**

**No. 11908.**

United States Court of Appeals Seventh Circuit.

June 18, 1957.

Rehearing Denied Aug. 6, 1957.

Thomas Hart Fisher, Chicago, Ill., Norman Crawford, Chicago, Ill., for appellant.

Michael J. Thuma, Chicago, Ill., Donald N. Berchem, E. Douglas Schwantes, Chicago, Ill., for appellee.

Before DUFFY, Chief Judge, SCHNACKENBERG, Circuit Judge, and GRUBB, District Judge.

SCHNACKENBERG, Circuit Judge.

In plaintiff's suit, which defendant caused to be transferred from an Illinois court to the United States District Court, on the ground of diversity of citizenship, an order of dismissal with prejudice at plaintiff's costs, was entered by the district court based upon that court's finding that "plaintiff has wilfully refused to obey an Order entered by this court providing for an inspection by the defendant of an automobile of plaintiff:" and from that order plaintiff has appealed.

Plaintiff's Oldsmobile automobile, which had been driven less than 50 miles, was stolen on October 3, 1955. It had been insured against theft by defendant's policy. Plaintiff notified defendant and requested forms for proof of loss. On October 5, 1955 plaintiff leased a substitute Oldsmobile at a monthly rental of $300. On October 14, 1955 the stolen car was recovered by the police in a badly damaged condition and was stored by them in the Edgecomb Garage in Chicago.

On November 15, 1955 plaintiff in a letter to defendant reported the foregoing facts and demanded payment of the purchase price together with reimbursement for the rental for the substitute car.

On November 17, 1955 defendant's adjuster, Lash, wrote attorney Thomas H. Fisher, plaintiff's husband, enclosing a letter to the police department authorizing the release of the car to defendant, and requested that plaintiff sign it. Lash asked Fisher to name a garage "so that we may have it delivered and inspected." The release was executed and returned to Lash. On November 23, 1955 Lash wrote to Fisher, acknowledging receipt of the release and adding: "Will you also inform me which repair shop or dealer you desire to inspect your vehicle. * * * We do not intend taking custody of your car; * * *."

This suit was filed on November 28, 1955.

On November 29, 1955 Fisher wrote to Lash, stating, in part:

"No objection is, of course, made to your obtaining possession of the car and taking it to Chapin Motor Sales in Winnetka or anywhere else you wish. However, I must make it clear that I reject the suggestion in the last two paragraphs of your letter to the effect that by so doing you will be acting in behalf of the insured. If you take possession of the car it will be your own act for your own company's benefit and not that of the insured."

Under date of November 30, 1955 defendant's general superintendent of claims wrote Fisher, *inter alia*:

"Attached herewith you will find release and authorization you sent us with your letter of November 22. We have no further interest in this instrument. * * * Furthermore, in view of your complete disregard and abrogation of Paragraph 14 of

your policy, United States Fidelity & Guaranty Company disclaims any and all coverage under its contract of insurance."

On January 17, 1956 defendant asked Judge Campbell of the district court to order plaintiff "to produce and permit defendant to inspect, examine and photograph" said automobile.

On April 23, 1956 plaintiff presented to Judge Campbell a motion for leave to file a report of the sale of said automobile by plaintiff for $1443.28, to which was attached a copy of a letter dated April 19, 1956 from plaintiff's attorney to defendant stating, *inter alia*, that said sum was "the highest cash bid so far obtainable" and that, unless defendant was willing to purchase the car for said sum or a larger sum, it would be sold for said sum.

On April 23, 1956 defendant's attorney explained to the court that he was asking for an order to inspect the automobile "because the car is missing. [*sic*] There is a carburetor missing, generator, battery, aircleaner. We have to lay hands on it in order to make an inspection. You can't just look at it. You have to run it." Judge Campbell stated "All right. I will give you leave to inspect. Go ahead and make it. * * * It doesn't take very long to inspect it."

There was no formal order entered. The court said: "The oral order is enough." The clerk's minute order in this respect continued plaintiff's motion for leave to file a report of sale to April 27, 1956 and granted leave to defendant to inspect the automobile before said date. Plaintiff's motion for leave to file report of sale was continued to May 3, 1956, and then to May 4, 1956, upon which latter date the court transferred the case for reassignment. It was reassigned to Judge Barnes.

On May 1, 1956, representatives of defendant visually inspected and took photographs of plaintiff's automobile at the Edgecomb Garage, in the presence of Fisher. They saw that the carburetor, air cleaner, generator, fan belt and battery were missing from the car.

Fisher objected to their working on the car in order to put in a carburetor and a generator.

On May 28, 1956, plaintiff sold the car for $1500 to the Chapin Motor Sales, which immediately resold it to a purchaser from Wisconsin who took it to that state.

At a hearing on June 12, 1956 Judge Barnes was told by defendant's attorney, Mr. Thuma, that he had received notice by registered mail from one of plaintiff's attorneys that the automobile had been sold.

Attorney Norman Crawford was present representing plaintiff and the following colloquy occurred:

Judge Barnes: "Thomas Hart Fisher is not a member of the bar of this court. If he comes in here I will send him to jail. You tell him that."

Mr. Crawford: "He won't be here; he is not in the United States."

Judge Barnes: "It is probably just as well that he is not in the United States."

Mr. Thuma explained to the court:

"We were out there to inspect the automobile. And there was a carburetor missing, and there was something else missing so that we could not run the engine. And when we wanted to put those parts on one attorney representing the plaintiff said we could not do that."

The court then entered an order, providing, *inter alia*, "that the defendant's motion for an order on the plaintiff to produce and permit defendant to inspect a certain automobile be and the same hereby is set for hearing on June 18, 1956, * * *."

On the latter date Mr. Thuma, defendant's attorney, told the court: "I thought we had an understanding that we could put those parts on there to see if there is anything wrong with this car. * * * The car belongs to the plaintiff in this case and I thought we had an understanding for an inspection," and Mr.

Crawford stated: "I have no control over the car. * * * It has been sold as junk. It lay in the lot for seven months and the charges were piling up."

Judge Barnes asked Mr. Thuma what order he wanted entered and Mr. Thuma said that Judge Campbell gave them an order and that "I would like to have *added* to that order that we might try the carburetor and the air cleaner to see if they are in order to move the engine and see if there is anything wrong with the moving parts of this car." (Italics are supplied.)

The court thereupon entered the following signed order on June 19, 1956:

"This matter coming on for hearing on defendant's motion for leave to inspect a certain 1955 Oldsmobile * * * automobile, * * * involved in this suit; and,

"It Appearing that the battery, carburetor, air cleaner, fan belt and generator of said automobile are missing and that each of said parts is essential to put the engine and automobile in motion to determine the physical condition of the movable parts of said vehicle; and,

"It Appearing Further that the order heretofore entered in this cause on April 23, 1956, granting defendant leave to inspect the said Oldsmobile automobile did not specifically authorize defendant to temporarily place said missing parts in or on said automobile in making its inspection:

"Now, Therefore: It Is Hereby Ordered that defendant is granted leave to temporarily attach and install in or on said Oldsmobile automobile a battery, carburetor, air cleaner, fan belt and generator and to move said vehicle forward and backward to inspect the movable parts thereof; and

"It Is Hereby Further Ordered that said inspection shall commence at 10:00 in the forenoon, Daylight Saving Time, on Thursday, June 21, 1956 at 666 Green Bay Road, Winnetka, Illinois."

On June 26, 1956 defendant moved the court to dismiss plaintiff's action

"* * * because of the plaintiff's refusal to obey the order of this court entered on April 23, 1956, granting defendant leave to inspect the Oldsmobile automobile involved in this proceeding, as well as the order entered on June 19, 1956 *amplifying* the order of April 23, 1956, as provided by Rule 37(b) (2) of the Rules of Civil Procedure for the United States District Courts."[1] (Italics supplied.)

The motion was accompanied by an affidavit of Ward Chase, which briefly reviewed his attempt on May 1, 1956 to attach a carburetor and air cleaner to the car. Mr. Thuma told Judge Barnes that on May 1, 1956 "we were denied the right to test the car * * *". He then presented to Judge Barnes the record of the proceedings before Judge Campbell on April 23rd in which the court said "I will give you leave to inspect."

Defendant's witness, Ward Chase, testified to the event of May 1, 1956 when there was a visual inspection of the car and pictures were taken. He also testified as to his visit on June 21, 1956, to Davis, manager of Chapin Motor Sales and that he was then told that the car was not there.

Manager Davis, a witness for defendant, testified that the car was sold to his company about May 28, 1956, and that no repairs were made on it.

On August 17, 1956 Judge Barnes entered the following order:

1. 28 U.S.C.A. Rule 37(b) provides, *inter alia:*
  (2) * * * If any party * * * refuses to obey * * * an order made under Rule 34 to produce any document or other thing for inspection, copying, or photographing or to permit it to be done, * * * the court may make * * * (iii) an order * * * dismissing the action * * *".

"This matter coming on for hearing on defendant's Motion to dismiss the action because of plaintiff's failure to comply with an Order of this court authorizing defendant to make an inspection of a certain automobile of plaintiff, said automobile and its physical condition constituting the subject matter of the suit;

"The court having considered evidence submitted by the respective parties as well as the Briefs and arguments filed by respective counsel;

"The court finds that the plaintiff has wilfully refused to obey an Order entered by this court providing for an inspection by the defendant of an automobile of plaintiff:

"It Is Therefore Ordered,

"That said proceeding be and the same is hereby dismissed, with prejudice at plaintiff's costs."

For several reasons we must reverse that order.

1. While the order contains a finding that plaintiff had wilfully refused to obey an order of the court providing for inspection by defendant of plaintiff's automobile, it does not state which order had been disobeyed. Actually there were two orders entered for inspection, one by Judge Campbell and the other by Judge Barnes, the different provisions and effect of each of which we shall hereinafter discuss. The drastic and punitive effect of a dismissal of a plaintiff's action must rest upon a more definite finding of dereliction by plaintiff.

2. While the order under review finds that plaintiff wilfully refused to obey an order entered by the court, neither the order of Judge Campbell nor the order of Judge Barnes commanded the plaintiff to do anything or to refrain from doing anything. Hence she could not have disobeyed either order. Judge Campbell's order merely gave leave to *defendant* to inspect the automobile, while Judge Barnes' order gave *defendant* leave to attach certain parts to the automobile and move it forward and backward.

3. Neither order required plaintiff to produce the automobile for inspection or to permit an inspection to be made, as provided by Rule 34 of the Federal Rules of Civil Procedure.[2]

4. Furthermore, if the dismissal order refers to Judge Campbell's order, it is clear that defendant did make *an inspection as provided for in said order* and thereby received the benefit that the order afforded. Moreover, it photographed the car. But defendant argues that the word "inspection" in Rule 34 includes the right to attach a carburetor and a generator to the motor of the car and to move it back and forth and determine the condition of the moving parts thereof, and also includes a right to remove the car from the garage in which the police had stored it.

When the case reached Judge Barnes, defendant's attorney told him about the order for inspection which Judge Campbell had entered and stated that he would like to have *added* to that order a provision that "we might try the carburetor and the air cleaner to see if they are in order to move the engine and see if there is anything wrong with the moving parts of this car." Language covering this addition and other matter was included in Judge Barnes' inspection order of June 19, 1956. Inferentially the need for an order containing this additional language is a convincing recognition by the district court that the matter thus added was not covered by Judge Campbell's use of the word "inspection". If we are to read into the word "inspect" the right to test the object produced for

2. 28 U.S.C.A. Rule 34, provides:
"Upon motion of any party showing good cause therefor * * * the court * * * may (1) order any party to produce and permit the inspection and copying or photographing, by or on behalf of the moving party, of any designated documents, papers, books, accounts, letters, photographs, objects, or tangible things, * * * and which are in his possession, custody, or control; * * *".

inspection, we would have to say that in the case of a substance produced for inspection, a chemical analysis could be made which might require the consumption of a part of the substance itself. Many instances of analysis, examination and physical operation of an object produced under Rule 34 suggest themselves if an inspection is to be broadened to include a test. We have no right to extend the rule to include tests, because we have no legislative authority. If those possessing the rule making power believe that the rule should be extended to cover such situations, they may amend the rule to accomplish that purpose.

While we recognize that the language of the rule should be given a liberal interpretation, both such a construction of the rule and its history prove incorrect the meaning attributed by defendant to the word "inspect". Historically,[3] Rule 34 was patterned after Federal Equity Rule 58, 28 U.S.C.A.Appendix[4] which provided for orders "to effect the inspection or production of documents in the possession of either party * * *". However, Rule 34, as we have seen, goes further and adds after the word "inspection" the words "and copying or photographing". This indicates that inspection did not, under Equity Rule 58, include copying or photographing, because, if it did, the added matter would have been redundancy. A *fortiori*, if the rule makers intended that "inspection" (of an automobile) was to include the attachment of a carburetor, a generator, or other parts to its motor and the operation not only of the motor but of the car itself,[5] then they would have used language to encompass such methods of testing.

Moreover, in defendant's motion for the entry of the order of dismissal, it referred to the alleged refusal by plaintiff to obey Judge Campbell's order as well as Judge Barnes' order "amplifying" Judge Campbell's order. "Amplify" is a synonym for "increase".[6] If the later order for inspection amplified or increased the first order for inspection, then defendant cannot logically argue that the new matter in the second order was present in the first order.

Even Judge Campbell, who entered the first order for inspection, evidently used that word in the proper sense because, although defendant also asked permission to examine the automobile, Judge Campbell both by his oral order and the minute order, omitted any reference to examination.

For these reasons it is clear that, if the order of Judge Campbell was referred to in the order of dismissal, there was no violation of said order by plaintiff.

5. If the dismissal order refers to Judge Barnes' order for inspection, under Rule 34 it is necessary that the object sought to be examined must at the time the order is entered be in the possession, custody, or control of plaintiff. There was no showing of that fact. Actually the court had already been advised by defendant's attorney on June 12, 1956 that he had received notice from one of plaintiff's attorneys that the automobile had been sold as junk. On June 26, 1956, at the hearing of the motion of defendant to dismiss the action, it produced as a witness its employee Chase, who testified that, on June 21, 1956, manager Davis confirmed that the car had been sold to his firm about May 28, 1956, and told him it had been resold to someone in Wisconsin. At the same hearing, defendant called Davis as its witness and he testified that the car was in Wisconsin on June 12, 1956, where it had been taken by the purchaser. There is no contention and no evidence that the car was returned from Wisconsin at any time after June 21, 1956.

3. Barron & Holtzoff, Federal Practice and Procedure, Rules Edition, Vol. 2, 483.

4. Rose's Federal Jurisdiction and Procedure, Third Edition, 737, at 738.

5. In line with the statement of defendant's attorney to Judge Campbell,—"you can't just look at it, you have to run it".

6. Webster's International Dictionary, 2d edition, 1934, 91.

The record shows that this sale was not surreptitious, because plaintiff made a detailed written report of her intention to sell the car and presented it to the court as early as April 23, 1956.

It was, therefore, apparent, when the order for inspection was entered by Judge Barnes, that the car was not only not in the possession, control, or custody of plaintiff but was actually not in the geographical limits of the judicial district of the court below. Accordingly, there was no basis in Rule 34 for the entry of the order. It was obvious, when the order was entered, that it could not be complied with. The explanation for this curious proceeding probably lies in the tense emotional situation which pervaded the proceeding culminating in the order. The learned trial judge, noting that plaintiff's husband was not in court on June 12, 1956, stated "if he comes in here I will send him to jail." Unless Judge Duffy's deduction be correct,[7] the record does not reveal the cause of this tension between the court and plaintiff's husband. The emotional strain imposed upon the judge, as evidenced by his remarks in open court, made it difficult for him to consider the situation objectively. In any event, the order, when entered and up to and including the time of the dismissal of the suit, was palpably not subject to accomplishment. Therefore, for that reason and the other reasons herein stated the order of dismissal, based upon a finding that plaintiff wilfully refused to obey the aforesaid order, cannot stand.

Accordingly, the order from which this appeal has been taken is reversed.

Reversed.

DUFFY, Chief Judge, joined by District Judge GRUBB, concurring.

I agree that the order of Judge Barnes dated August 17, 1956, dismissing the suit with prejudice at plaintiff's costs, must be reversed.

Judge Barnes' order refers to "plaintiff's failure to comply with an order of this Court." It is apparent to me the judge refers to the order which he entered on June 19, 1956. At the time that order was entered, plaintiff had sold her automobile and that fact had been reported to the Court. There is no suggestion that the sale was not in good faith. Judge Barnes' order authorized defendant to make tests of an automobile not in the possession of plaintiff or her agents, and which was not within the jurisdiction of the Court. Obviously, the order could not be carried out. In my view, there was no sufficient basis to dismiss the suit because defendant was unable to make the tests authorized by the order.

I do not agree with the limited scope given to the word "inspection" as suggested in Judge SCHNACKENBERG'S opinion. In a case of this kind I think the trial court could insist that a motor vehicle, damages to which is the subject of the suit, could be inspected and reasonable tests be made in order to ascertain the true condition of the vehicle. Of course, the Court could impose reasonable conditions, such as making those conducting the tests liable for any additional or further damage to the vehicle which damage was caused by the tests.

It is apparent that Judge Barnes did not have a kindly feeling toward Thomas Hart Fisher, the husband-attorney for plaintiff. However, Fisher himself was as least partly responsible for the feeling of exasperation on the part of the Judge. There was no reasonable probability that competent mechanics, in making the inspection and tests, would have further damaged the wrecked automobile. Yet, Fisher stubbornly refused to permit the representatives of the Insurance Company to do other than look at the wreck and to take some pictures. It is not difficult to understand why a "tense emotional situation" was created.

7. Post, 246 F.2d 350.