**Paul MARTIN and Verla Martin, Appellants,**

v.

**REYNOLDS METALS CORPORATION, Appellee.**

No. 17433.

United States Court of Appeals Ninth Circuit.

Nov. 2, 1961.

Rehearing Denied Dec. 7, 1961.

George W. Mead and Irving Rand, Portland, Or., for appellant.

King, Miller, Anderson, Nash & Yerke; Fredric A. Yerke, Jr., and Clifford N. Carlsen, Jr., Portland, Or., for appellee; Gustav B. Margraf and W. Tobin Lennon, Richmond, Va., of counsel.

Before ORR, KOELSCH and DUNIWAY, Circuit Judges.

DUNIWAY, Circuit Judge.

This case presents novel questions under Rules 27 and 34, F.R.Civ.P. We conclude that the order appealed from

was within the powers of the court below. That court, as we shall show, had jurisdiction under 28 U.S.C. § 1332 (diversity). The appeal is proper under 28 U.S.C. § 1291, since the order is final so far as the proceeding below is concerned. (Mosseller v. U. S., CA 2, 158 F.2d 380, 382; cf. Todd Engineering Dry Dock & Repair Co., Inc. v. U. S., CA 5, 32 F.2d 734, 735)

■ Appellee, to which we shall refer as "Reynolds", filed a "Petition to Perpetuate Evidence", purporting to act under Rules 27 and 34, F.R.Civ.P. Briefly, the petition shows: Reynolds is a Delaware corporation and has its principal office in Virginia. Appellants are citizens of Oregon. Reynolds owns property near Troutdale, Oregon, west of the Sandy River, on which it operates an aluminum reduction plant. Appellants also own property nearby, and east of the river, on which they raise cattle. Appellants claim that, since 1955, fluorides emanating from the Reynolds' plant have been discharged on their lands and into the water thereon, and their cattle have been injured by eating vegetation and drinking water contaminated by the fluorides. Specifically, they claim that 79 cattle died in 1959 and 95 in 1960. They also claim that they have been damaged to the tune of $500,000. Reynolds expects to be sued by Appellants and cannot itself bring or cause the action to be brought. These allegations clearly bring the proceeding within Rule 27, F.R.Civ.P. and 28 U.S.C. § 1332. (See Mosseller v. U. S., supra.)

Reynolds also alleges that it has not, in fact, damaged appellants, and it believes that certain information and data will demonstrate that appellants' cattle have not been damaged, the data being as follows:

"1. The fluorine content of samples of forage, feed, air, water, soil, vegetation and mineral supplements taken periodically from areas where livestock are being pastured.

2. Physical examinations of such cattle, including photographs thereof.

3. The fluorine content of samples of urine obtained from such cattle.

4. The fluorine content of bone and tissue samples taken from cattle which have died or which have been slaughtered."

On two occasions, Reynolds asked permission to examine Appellants' lands and cattle, and on one occasion asked them to advise it if any cattle died, so that it might examine them. These requests were denied. Appellants are accumulating similar information to that desired by Reynolds, through their own experts. It is appellants' practice from time to time to dispose of their cattle, so that any attempt by Reynolds to get the data it needs would be seriously impaired. Reynolds desires to take appellant Paul Martin's deposition "for the purpose of eliciting from him information concerning present plans for the disposition of the cattle owned by him which are presently being pastured upon the aforesaid lands as well as information from him concerning cattle which he may have removed from said lands to be pastured in other areas". It also desires to perpetuate the data described above. The petition is verified, and the factual allegations that it contains are nowhere denied by appellants.

Appellants filed objections which are, in substance, a motion to dismiss the petition, together with some detailed objection to the type of order sought. A hearing was had, at which appellant Paul Martin was present in person and by counsel. He personally stated to the court that he believed he had been damaged, but did not know whether he would sue. It was also brought out that the Martins had brought three other suits against Reynolds. (See Martin v. Reynolds Metals Company, 221 Or. 86, 342 P.2d 790; Reynolds Metals Company v. Yturbide, et al., CA 9, 258 F.2d 321; Martin v. Reynolds Metals Company, D.C.Ore., Civil No. 7,966) There was no objection to the manner in which this information was presented. The court then indicated that it would grant an order, and offered counsel for appellants

an opportunity to specify objections to any of the terms proposed, and to present testimony in support of such objections, appellants claiming that they were being harassed. Appellants declined to do so. The court then made the order appealed from, substantially in the form requested by Reynolds. Because of its novelty and scope, we set it out in full in the margin.[1]

1. ORDERED that Reynolds Metals Company be and it hereby is authorized to take the deposition of Paul Martin for the purpose of perpetuating his testimony on the 13 day of June, 1961, at Room 515 at 10:00 o'clock A.M. in the Federal Courthouse Building, Portland, Oregon, and it is further

ORDERED that Reynolds Metals Company shall deliver to Paul Martin prior to the time of said deposition a list of the matters into which Reynolds Metals Company intends to inquire, and it is further

ORDERED that Paul Martin shall permit such representatives of Reynolds Metals Company as Reynolds Metals Company shall select, not exceeding ten at any one time, to enter upon the real property described in Reynolds Metals Company's application herein at the following times and for the following purposes:

(1) To enter upon said real properties on the third Tuesday of each month beginning June 20, 1961 between the hours of 8 a. m. and 5 p. m. for the purpose of

(a) Obtaining specimen samples of forage, feeds, air, water, soil, vegetation and mineral supplements from such locations thereon as may be selected by Reynolds Metals Company;

(b) Examining the pastures and supplemental feed and measure the quantities of such feed which are being fed to the animals thereon;

(c) Photographing the animals, foodstuffs, pastures and facilities; and

(d) Making a gross or visual examination of the animals and obtaining samples of urine from at least 20 animals to be selected at random by Reynolds Metals Company. Only a veterinarian licensed to practice in the State of Oregon may take such samples. Reynolds Metals Company shall be permitted to confine animals from which specimens are to be obtained in a chute while obtaining specimens.

(2) To enter upon said real properties with the purpose of making a close examination of the cattle thereon, including the inspection and photographing of the teeth. Such examinations may be made by any veterinarian licensed to practice in any state.

ORDERED that Paul Martin shall notify Reynolds Metals Company by means of a telephone call to Harold W. Zeh or Earl W. Anderson at MOhawk 5-9171, Troutdale, Oregon, immediately upon the discovery of the death of any animal located on said real property claimed by Paul Martin or Verla Martin to have been damaged or injured by reason of Reynolds Metals Company operations and permit Reynolds Metals Company to have access to the body of such animal to perform a post-mortem examination thereof and to remove samples therefrom for analysis. Reynolds Metals Company shall have 24 hours after receiving such telephone call within which to perform such post-mortem examination and within which to remove samples for analysis, and it is further

ORDERED that Paul Martin and Verla Martin notify Reynolds Metals Company of any contemplated sales of animals which have been in said real property and which Paul Martin and Verla Martin claim have been damaged by reason of Reynolds Metals Company's operation of the Troutdale aluminum reduction plant prior to delivering possession of animals to be sold to the purchaser or consigning to a Commission Agent for sale, such notice to be in writing or by means of a telephone call placed as outlined in the preceding paragraph herein and to include a statement of the proposed time and place of delivery and name and address of the purchaser or Commission Agent to whom the animals are consigned for sale, all to the end that Reynolds Metals Company may have an opportunity to arrange with the purchaser thereof to examine the animals or, if sold for slaughter, to make a post-mortem examination thereof and to obtain samples therefrom for chemical analysis.

Reynolds Metals Company's rights under the foregoing orders are subject to the following limitations:

A. All representatives of Reynolds Metals Company who enter upon said real property will stay in two parties. Paul Martin shall have the right to accompany the parties at all times.

B. Reynolds Metals Company shall give Paul Martin a portion of any sample taken for chemical analysis if requested to do so by Paul Martin.

C. Reynolds Metals Company shall give to Paul Martin a copy of the re-

On this appeal, the points of appellants are: (1) The court had no power to order the taking of Martin's deposition; (2) it had no power to permit any entry by Reynolds on Martin's property, or any entry for any purpose other than inspecting, measuring, surveying or photographing, or to permit more than one entry, or to permit any taking of samples; (3) it had no power to permit making an examination of the cattle, or confining them or taking samples of their urine or photographs of their teeth; (4) it had no power to require appellants to give Reynolds notice of the death of animals, or permit postmortems; (5) it had no power to require notice of contemplated sales.

 We note particularly that there was no attack below, and there is none here, on paragraphs A to I of the order, which appear to us to be protective provisions for the benefit of the appellants, of the type contemplated by Rule 30(b), F.R.Civ.P., which is specifically referred to in Rule 34 and which, we think, is also referred to in Rule 27(a) (3) when it states that the deposition may be taken "in accordance with these rules". Appellants were given ample opportunity to suggest other protective provisions, as well as to suggest modifications in the various provisions for entry, sampling, testing, photographing, giving notice, etc., but declined to do so. Under these circumstances, the attack being solely upon the power of the court to make the order, we do not consider or pass upon the propriety of the protective provisions or of the details of other provisions of the order. We do not necessarily approve of all of them. For example, it might be claimed that paragraph G or paragraph H deprives the Martins of a

port of the results of all chemical analyses from samples taken in accordance with the order of the court within 10 days after the completion of the analyses.

D. Reynolds Metals Company shall give Paul Martin a copy of any report of any person making an examination on behalf of Reynolds Metals Company pursuant to the order of the court which is furnished to Reynolds Metals Company within 10 days after the report is received.

E. Paul Martin shall be permitted to have his experts and observers present during any examination made in conformance with the order of the court.

F. Reynolds Metals Company shall furnish to Paul Martin the name and address of any representative who makes examination or who takes samples in conformance with the order of the court.

G. Reynolds Metals Company's representatives will handle Paul Martin's animals in a careful manner so as to avoid injury to such animals. Should any animal be injured, Reynolds Metals Company shall compensate Paul Martin for such injury in an amount to be agreed upon by Reynolds Metals Company and Paul Martin or, if they cannot agree, in an amount to be determined in a summary hearing by this court.

H. Paul Martin shall have the option of rounding up his animals so that Reynolds Metals Company may take the monthly urine samples referred to herein. In such event, Reynolds Metals Company shall pay Paul Martin the reasonable cost of the services rendered by Paul Martin and his employees in rounding up said cattle. Should any animal be injured by Paul Martin or his employees while rounding up the same so that Reynolds Metals Company may take said monthly urine samples, Reynolds Metals Company shall compensate Paul Martin for such injury, if not willful, in an amount to be agreed upon by the parties, or, if they cannot agree, in an amount to be determined in a summary hearing by this court.

I. Reynolds Metals Company will indemnify and hold Paul Martin harmless from any and all liability of Paul Martin to others arising out of the sampling, examining, photographing and measuring by Reynolds Metals Company, and activities incidental thereto, on the fourth Tuesday of each month which Paul Martin is required to permit because of the provisions of this order; provided, however, that Reynolds Metals Company will not be required to indemnify Paul Martin with respect to injuries to others which are intentionally caused by Paul Martin or which are caused by the willful misconduct of Paul Martin. Paul Martin will not settle any claims for damages as to which he contends Reynolds Metals Company is required to indemnify him, and Reynolds Metals Company shall have the right to defend any claim which it believes to be unfounded or not justified.

right to jury trial upon the issue of damage to their cattle. But the point was never made, either to the court below or here, and we therefore do not decide it.

1. *The court had power to order the taking of the deposition.*

■■ Power to order the taking a deposition is clearly conferred under Rule 27, F.R.Civ.P., which provides, as stated by the Advisory Committee on Rules, "a simple method of perpetuating testimony in cases where it is usually allowed under equity practice or under modern statutes". (28 U.S.C.A. Rules 17 to 33, p. 353) Abuse of the rule by potential plaintiffs, who might try to use it as a means of discovery to enable them to draw a complaint (see 7 U. of Chi. L.Rev. 321, 15 Tenn.L.Rev. 737, 34 Ill. L.Rev. 1) seems to be avoided by the requirement of Rule 27 that the party seeking the deposition be unable to bring the suit or cause it to be brought. The position of one who expects to be made a defendant is different, and we think that such a defendant should be, and is, entitled to use the Rule, upon a proper showing, to preserve important testimony that might otherwise be lost. (See De Wagenknecht v. Stinnes, C.A.D.C., 102 U.S.App.D.C. 89, 250 F.2d 414, 416–417)

■ Nor do we think that Rule 27 requires that the inquiry at the deposition be limited to evidence that would be material and admissible in evidence at the trial. We need not and do not decide whether the inquiry can be as wide in scope as is contemplated by Rule 26(b), dealing with depositions in a pending action, as that question is not before us. The inquiry here proposed is narrowly limited, its purpose being to enable Reynolds to discover when relevant physical evidence is likely to be disposed of and lost, and the location of other physical evidence that has been transferred away from appellees' property and thus made less readily available. These inquiries are thus directly related to the discovery of evidence that would otherwise be made unavailable because of action of the adverse party. We know of no good reason why such an inquiry should not be permitted under the circumstances of this case. To permit it is to promote the purpose of perpetuation of testimony; to forbid it would defeat that purpose. The fact that, apparently, no similar request has come before an appellate court is no reason why we should disapprove it now. That something has never been done before is not, in our view, an answer, in law or elsewhere, to a persuasive argument that it ought to be done now.

■ The point is made that the order itself does not specify the subject matter of the examination as required by Rule 27(a)(3). We agree that it should do so, and we do not approve the court's procedure, which it apparently thought was a substitute for this requirement, of requiring Reynolds to submit to appellants, in advance of taking the deposition, a list of the matters into which it intends to inquire. The rule requires that the court specify, and it cannot delegate this duty to the inquiring party. The order should also specify whether the deposition is to be taken upon oral examination or written interrogatories.

2. *The court had power to order the inspection and examination that it ordered.*

■ Appellants' first contention is that the request for the taking of Martin's deposition is a sham, and was made solely for the purpose of enabling Reynolds to take advantage of the provisions of Rule 34, F.R.Civ.P. They then argue that Rule 34 cannot be used in a proceeding to perpetuate testimony, except in connection with a deposition, and that because the request for a deposition is a sham, the rest of the order must fail. It would be a sufficient answer to say that we find nothing in the record requiring a finding that the request for the deposition is a sham. But we do not rest our decision on that ground.

■ In our opinion, a party may, in a proper case, proceed under Rule 27 for an order under Rule 34 without taking a

deposition at all, and we think that this is such a case.

As originally promulgated, Rule 27 contained no reference to Rule 34 or Rule 35, and for that reason it was held in Egan v. Moran Towing & Transportation Co., D.C.S.D.N.Y., 26 F.Supp. 621 (1939), that advantage could not be taken of Rule 34 in a proceeding under Rule 27. As a result of this decision, there was added to the second sentence of Rule 27(a) (3), which read: "The deposition may then be taken in accordance with these rules", a semicolon followed by: "and the court may make orders of the character provided for by Rules 34 and 35". In this connection, the Advisory Committee on Amendments to Rules says "Since the second sentence in subdivision (a) (3) refers only to depositions, it is arguable that rules 34 and 35 are inapplicable in proceedings to perpetuate testimony. The new matter clarifies". (28 U.S.C.A. Rules 17 to 33, p. 353)

The clarification, however, is unclear. It is arguable that, read literally, the amendment permits the use of Rules 34 and 35 only when a deposition is to be taken. We think that the purpose—and common sense—should prevail over the awkward form in which the amendment is cast. The purpose is to make Rules 34 and 35 applicable in proceedings to perpetuate testimony. Common sense says that there will be cases in which they should be applicable where a deposition is not necessary or appropriate. It may frequently occur that the only thing likely to be lost or concealed is a paper or object that should be subject to inspection, etc., under Rule 34, or the physical or mental condition of a party, who should be subject to physical or mental examination by a physician under Rule 35. In such cases, the party seeking to perpetuate such evidence should not be required to couple his request with a request that a deposition be taken. We do not think that the language of amended Rule 27(a) (3) compels such a requirement. Mr. Moore agrees with us (4 Moore's Federal Practice, 2d ed. Sec. 27.13, p. 1829). The conjunctive form of the sentence can and should be interpreted to mean that the right to a rule 34 order, like the right to take a deposition, depends upon the making of a proper showing, mentioned in the preceding sentence.

 The court thus had the power to make an order under Rule 34. Could it make the order that it did? We start with a proposition that has become axiomatic. One of the purposes of the Federal Rules of Civil Procedure was to take the sporting element out of litigation, partly by affording each party full access to evidence in the control of his opponent. To that end, Rule 34, like the other rules relating to discovery, is to be liberally construed. (See De Wagenknecht v. Stinnes, supra, C.A.D.C., 250 F.2d 414, 416; Hickman v. Taylor, 329 U.S. 495, 507, 67 S.Ct. 385, 9 L.Ed. 451; Roebling v. Anderson, C.A.D.C., 103 U.S. App.D.C. 237, 257 F.2d 615, 620; Tiedman v. American Pigment Corporation, CA 4, 253 F.2d 803, 808) Of course, the showing required by Rule 27 must first be made before Rule 34 comes into play. But once that showing is made, then the rule of liberal construction should apply.

Rule 34 permits, upon a showing of good cause, an order requiring a party "to produce and permit the inspection and * * * photographing * * * of any designated objects, or tangible things * * * which constitute or contain evidence * * * or * * * to permit entry upon designated land or other property * * * for the purpose of inspecting, measuring, surveying, or photographing the property or any designated object or operation thereon * * *. The order shall specify the time, place, and manner of making the inspection and taking the * * * photographs and may prescribe such terms and conditions as are just".

 The first contention of appellants, that the court cannot order them to permit Reynolds to enter their property, flies in the face of the language of the rule. No contention is made that the rule is not valid in this respect.

 Their second contention, which is that the provision for taking samples of forage, feed, air, water, soil, vegetation and mineral supplements for testing is beyond the scope of Rule 34, we find equally without merit. The word "inspection" has a broader meaning than just looking. The dictionary (Funk & Wagnalls New Standard Dictionary) defines "inspect" as "to examine carefully or critically, investigate and test officially, as to inspect food" and an "inspection" as "especially, a critical investigation or scrutiny". We think that "investigation", when liberally construed, includes the sampling and testing here contemplated. (cf. the majority opinion in Fisher v. United States Fidelity & Guaranty Company, CA 7, 246 F.2d 344, at p. 350) It appears that in a prior action a similar order to this was made and was in effect for some months. If appellants were concerned, as they now profess to be, with possible damage to their property, they could readily have made a showing as they were given an opportunity to do. Under the circumstances, the court could conclude that any damage they might suffer would be negligible. We find nothing in Rule 34 to the effect that one entry only may be ordered. The number should depend upon the necessities of the case. No showing is made that more entries are permitted than are needed.

 What we have said also disposes of the claim that the court could not permit examining, confining or photographing the cattle, or taking urine samples from them. The order specifically requires that Reynolds compensate appellants for any damage done. If the physical examination of a party properly includes taking a blood sample (Yee Szet Foo v. Dulles, DCNY, 18 F.R.D. 237), physical inspection of cattle includes the making of such tests, and the taking of such samples from them, as the particular case may require. This also applies to post-mortems on dead cattle.

 Nor can we find that the requirement of notice to Reynolds of the death or contemplated sale of cattle is beyond the power of the court to "prescribe such terms and conditions as are just".

 The variety of factual situations that may come before the courts approaches the infinite, as does the variety of things that may be evidence in a case. Of necessity, then, there must be a wide discretion lodged in the trial judge in making orders such as that now before us. (Benning v. Phelps, CA 2, 249 F.2d 47; Williams v. Continental Oil Co., CA 10, 215 F.2d 4, 7; De Wagenknecht v. Stinnes, supra, CADC, 250 F.2d 414, 417; Mosseller v. U. S., supra, CA 2, 158 F.2d 380, 382) We can find no abuse of that discretion here. Moreover, the power of the court below to prescribe such terms and conditions as may be just, under Rule 34, or to make protective orders under Rule 30(b), has not been exhausted. It still has discretion to make changes in its order for those purposes, upon a proper showing, and bearing in mind that appellants have once declined the opportunity to make a showing.

That portion of the order relating to the deposition is vacated and the court below is directed to specify the subject matter of the examination of the witness, and to specify whether the deposition is to be taken upon oral examination or written interrogatories. In all other respects, the order is affirmed.