Jasen, J. (dissenting in first above-entitled proceeding).
The Alcoholic Beverage Control Law requires the licensee to keep “ adequate books and records of all transactions ”. (§ 105, subd. 15.) “ Such books and records shall be available for inspection by any authorized representative of the liquor authority ” (§ 105, subd. 15) and the State Liquor Authority has the general power “ [t]o inspect or provide for the inspection of any premises where alcoholic beverages are manufactured or sold.” (§ 17, subd. 7.)
Here, the Authority’s investigators entered the licensed premises during business hours and received permission to inspect the premises and the books and records. It was during this authorized inspection that one of the investigators found, in a coat hanging in the back part of the licensed premises, the sales slips indicating that sales on credit were made by the licensee in violation of section 100 of the Alcoholic Beverage Control Law.
The majority have held that these sales slips were unlawfully seized and could not be used as evidence in any proceeding instituted by the Liquor Authority against the licensee.
I disagree with this view.
There can be no doubt that the liquor industry is of a peculiar genre, having an inordinately strong effect on our State’s public health, welfare and morals, and it must of necessity be strictly controlled.
We recognized the right of the State to restrict, regulate and control every facet of this industry in Seagram & Sons v. Hostetter (16 N Y 2d 47), where we said: “A long history of regulation, control, price fixing, place of time and sale setting, and outright extinction lies behind the liquor business in this country since Colonial times, and it is too late today to suggest that the rights of those who chose to engage in it are on a constitutional or legal parity with the rights of people who trade in bicycles, or cosmetics, or furniture.” (Id., at p. 56.)
Indeed, as the dissenting opinion in that case noted: “No *664 one will question the traditional rights of the States * * * under their inherent police power to prohibit, restrain or regulate the manufacture, sale and use of intoxicants [citations omitted]. The New York Legislature has power to enact a variety of laws calculated to suppress intemperance or to minimize the known evils of the liquor traffic, since the trade is one as to which there is a recognized public interest. But ‘ police power ’ is not a magic incantation to frighten off judicial investigation into the constitutionality of statutes. The State of New York could completely outlaw the sale of liquor but, having chosen instead to regulate it, the restrictions and requirements can be such only as are necessary to protect public safety, health and morals from the evils, known or apprehended, of the trade.” (Id., at p. 61.)
Bather than choosing to prohibit the sale of liquor by individuals as some States have done, New York has elected to license persons to engage in the liquor business. However, in order to protect the public from the many evils which that trade may generate, the State has declared certain transactions, such as the retail sale of liquor on credit, to be illegal. To enforce these regulations, the Liquor Authority was granted the right to make unannounced inspections of licensed premises. I believe that, by requesting the privilege to dispense liquor, the licensee implicitly consents to such regulations and inspections and makes a limited waiver of his Fourth Amendment rights. (Manchester Press Club v. State Liq. Comm., 89 N. H. 442; Oklahoma Alcoholic Beverage Control Bd. v. McCulley, 377 P. 2d 568 [Okla., 1963]; cf. Brown v. State, 391 S. W. 2d 425 [Tex. Crim. App., 1965].)
The right to inspect is not merely confined to optical observation of areas open to the public. (Oklahoma Alcoholic Beverage Control Bd. v. McCulley, supra; Silber v. Bloodgood, 177 Wis. 608 [1922]; see, also, Martin v. Reynolds Metals Corp., 297 F. 2d 49, 57 [9th Cir., 1961].)
Thus, in Matter of Fortino v. State Liq. Auth. (273 N. Y. 31 [1936]), the Authority inspector, in the course of the inspection provided for by the statute, found contraband liquor under straw in a kennel attached to the licensed, premises. Yet this court upheld disciplinary action. The same result was reached *665 in Matter of Okamura v. Hostetter (20 A D 2d 757 [1st Dept., 1964], mot. for lv. to app. den. 14 N Y 2d 485 [inspection of kitchen, storeroom, dining room and an area claimed by the licensee to be his personal living quarters]).
Considering the peculiar nature of the liquor industry, I believe that evidence discovered during administrative inspections of licensed premises may be used in an administrative hearing even though the inspector may not have possessed probable cause to believe that a violation of the Alcoholic Beverage Control Law was being committed upon the premises. Additionally, where, as here, consent was given for the inspection, I do not believe a constitutional problem is even presented. (Cf. Camara v. Municipal Ct., 387 U. S. 523; See v. City of Seattle, 387 U. S. 541.)
I submit that the broad language of the majority goes far beyond reasonable constitutional requirements and will seriously hamper reasonable regulation of the liquor industry.
For the foregoing reasons, the order of the Appellate Division should be reversed and the order of the State Liquor Authority suspending petitioner’s license reinstated.
In the Matter of Fmn’s Liq. Shop v. State Liq. Auth.:
Judges Burke, Bergan, Keating and Breitel concur with Chief Judge Fulp; Judge Jasen dissents and votes to reverse in a separate opinion in which Judge Scileppi concurs.
Order affirmed.
In Matter of La Penta v. State Liq. Auth.:
Judges Burke, Scileppi, Bergan, Keating, Breitel and Jasen concur.
Order affirmed.
In Matter of Malik v. State Liq. Auth.:
Judges Burke, Scileppi, Bergan, Keating, Breitel and Jasen concur.
Order affirmed.