(No. 21934.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LIONEL A. SHERWIN, Plaintiff in Error.

*Opinion filed October 21, 1933.*

DENEEN, HEALY & LEE, (ROY MASSENA, and DONALD N. SCHAFFER, of counsel,) for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURT-NEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, and GRENVILLE BEARDSLEY, of counsel,) for the People.

Mr. JUSTICE SHAW delivered the opinion of the court:

On February 10, 1932, plaintiff in error, Lionel A. Sherwin, was ordered committed to the county jail of Cook county for a term of ninety days for an alleged direct contempt of the municipal court of Chicago before the Hon. Edgar A. Jonas, a judge of that court. This contempt of court is recited in the order to have occurred on December 9, 1931. The judgment of the municipal court having been affirmed by the Appellate Court for the First District, the cause is now here on writ of error to that court.

The commitment order recites that plaintiff in error, an attorney at law, appeared for the defendant in a certain case then recently tried in the municipal court of Chicago, and that on December 9, 1931, he, "contriving to deceive and entrap the court into the signing and sealing of a false bill of exceptions so as to cause the reversal of said cause, falsely, wickedly, knowingly and contemptuously presented to said [municipal] court, in open court, a false draft of a bill of exceptions." The order sets forth in detail various discrepancies appearing in what the court considered to be a true statement of what took place at the trial and the matters set forth in the bill of exceptions presented either by or on behalf of the plaintiff in error. Some of the discrepancies were as to matters of evidence and others as to instructions. It appears that after plaintiff in error had preserved his rights by presenting the bill of exceptions or having someone else present it for him, and having it duly marked "presented," he gave it or sent

it to opposing counsel for their examination. It further appears that after this examination by opposing counsel the presiding judge instituted an "inquiry" to ascertain whether or not contempt of court was committed in connection with the preparation and presentation of the bill of exceptions in question. These inquiries were conducted without there having been filed or served upon the plaintiff in error any formal charge or complaint which he might answer or any notice or rule to show cause. Although it appears that he was represented in court by counsel, it does not appear, except by inference, that he was personally present in court either at all of the hearings or at the time of the actual entry of the final order.

The plaintiff in error contends that the order is void for lack of jurisdiction in not affirmatively showing on its face that the plaintiff in error was present in court when it was entered; that the court had lost jurisdiction to punish him for a direct contempt by reason of the lapse of time after the presentation of the bill of exceptions and before the entry of the final order; that the order states the conclusions of the court rather than facts known to the court from his personal knowledge of matters which took place in his presence; that whatever was done was not direct, but, at most, constructive or indirect, contempt; that there was no evidence taken on the court's inquiry sufficient to sustain its findings, and that the judge was not acting in a judicial capacity when he marked the bill of exceptions "presented." Our opinion on all of these contentions of the plaintiff in error may be disposed of by determining the one point of whether or not the plaintiff in error has been deprived of his constitutional rights as to due process of law as guaranteed to him by our State and Federal constitutions.

It has long been established by the decisions of this and of other courts that a criminal contempt which is direct in its nature—*i. e.,* which takes place in the very presence of

the judge, making all of the elements of the offense matters within his own personal observation and knowledge, or which occurred out of his presence, if admitted by the contemnor in open court—may be punished summarily by the court without any formality of pleading, notice or answer. (*People* v. *Rockola,* 346 Ill. 27.) It is, we think, equally well established that if the contempt is indirect— *i. e.,* one which in whole or in an essential part occurred out of the presence of the court and which is therefore dependent for its proof upon evidence of some kind—there must be a notice, citation or rule to show cause served upon the alleged contemnor. (*Ex parte Savin,* 131 U. S. 267; *Cooke* v. *United States,* 267 id. 518; 4 Blackstone's Com. 286.) We therefore find upon this record that we are not principally concerned with the question of whether the plaintiff in error committed wrongful acts amounting to contempt of court, but rather with the question of whether he has been deprived of his liberty without due process of law. If he has been denied the protection of the constitution, the fact that he has been guilty of contempt of court cannot justify his imprisonment.

An examination of the record discloses that the adjudication of guilt is at least in part necessarily based upon facts outside the personal knowledge of the presiding judge and facts which could only be determined by the taking of testimony. In view of the impossibility of anyone knowing what is taking place within the mind and heart of a fellow human being, it is manifestly impossible for the judge to have known that the plaintiff in error falsely, wickedly, knowingly and contemptuously "presented" a false bill of exceptions. The bill of exceptions may have been false, but that is only part of the offense. It is equally a part, and perhaps a more important part, of the offense that the false bill of exceptions should have been known by the plaintiff in error to be false and presented by him for the purpose of entrapping the court. It is conceivable

that the bill of exceptions might have been false in a great many particulars if prepared in the usual course by a court reporter, but it does not by any means follow either that the plaintiff in error knew it to be false, or that, knowing it to be false, he presented it to the court for the purpose of entrapping it. It is possible that the plaintiff in error may have known that the bill of exceptions contained errors and yet have had it presented to preserve his rights, well knowing that opposing counsel and himself would have an opportunity to make the necessary corrections before its final signing and sealing. This was a point upon which the plaintiff in error was entitled to be heard on a formal charge. It was, in fact, a point upon which he .was entitled to purge himself by his oath if he saw fit to do so, leaving the People to their remedy by indictment for perjury if they considered his oath false. *People* v. *McLaughlin,* 334 Ill. 354; *People* v. *Rongetti,* 344 id. 107.

The law as to indirect contempt cannot safely be extended to the point which an affirmance of this judgment would require. Any man who is charged with any offense which may result in his being deprived of his liberty has the constitutional right to know the nature of the charge against him, to have it definitely and specifically set forth, to be accorded an opportunity to answer and to be heard and introduce evidence in his own defense. Nothing less than this will satisfy the requirements of due process of law. So far as the present record is concerned, the plaintiff in error has been deprived of his liberty without any formal charge preferred against him, on matters such as the actual preparation of the bill of exceptions, which must have taken place out of the presence of the presiding judge, and upon hearings to which he was not summoned to appear. So far as the record shows, any of these hearings could just as well have been entirely *ex parte* as to have had the plaintiff in error represented in court either in person or by counsel.

The judgments violate the State and Federal constitutions in depriving the respondent of his liberty without due process of law and are necessarily void.

The judgments of the Appellate Court and municipal court of Chicago are reversed.     *Judgments reversed.*