Robert E. Franzen *et al.*, Plaintiffs-Appellees, *v.* Dunbar Builders Corporation, Defendant-Appellant.

(No. 54497;

First District—March 30, 1971.

Robert E. Pfaff, of Chicago, (Jenner & Block, of counsel,) for appellant.

Springer & Casey, of Chicago, (Donald E. Casey and Gary E. Dienstag, of counsel,) for appellees.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Defendant, Dunbar Builders Corporation, appeals from a judgment entered against it in an action for breach of contract in the amount of $36,942.45. Plaintiffs in the action were 51 purchasers of condominium units in a condominium apartment building known as Mulford House which was constructed by defendant. On appeal defendant contends:

1. The trial court erred in admitting plaintiffs' set of plans.
2. The trial court erred in denying admission of defendant's set of plans.
3. The trial court improperly awarded damages for sliding door installation.
4. The trial court erred in refusing to permit the architect to testify as to costs of roof repair.

Plaintiffs' Second Amended Complaint consisted of two counts. Plaintiffs in Count I alleged *inter alia:* that plaintiffs, individually and severally, had contracted with defendant for the construction of a multi-unit apartment structure in a workmanlike manner and in accordance with designated plans and specifications; that defendant failed to complete material parts of the building and used materials and workmanship not in compliance with the designated plans and specifications; and that defendant has thereby breached its contract with plaintiffs and caused plaintiffs to incur substantial damages.

Plaintiffs in Count II realleged much of the substance of Count I and further alleged *inter alia:* that pursuant to the contract defendant retained exclusive ownership and control of the premises until formation of the plaintiffs' Board of Managers in October, 1964; that during such period of ownership and control, defendant occupied a fiduciary relationship with respect to plaintiffs; and that defendant breached its fiduciary duty by acting in its own self-interest and by permitting inferior materials and workmanship to be applied. Defendant further alleged that said breach caused plaintiffs to incur substantial damage.

Plaintiffs filed a Bill of Particulars which specified the item of defendant's alleged breach. The major items were that defendant substituted inferior doors and windows, eliminated a 25 ton air conditioner to cool the commonways, failed to insulate the water lines, failed to balance the ventilation system, failed properly to install a fire hose connection and check valve, improperly installed the roof, and improperly constructed the balcony decks.

Defendant denied substantially all material allegations of plaintiffs' complaint.

After hearing all the evidence, the trial court, sitting without jury, held in favor of plaintiffs on Count I. The judgment order specified 15 items of defendant's breach and assessed separate damages for each totaling $36,942.45. The trial court further held in favor of defendant on Count II. Defendant appeals from the judgment entered against it on Count I of plaintiffs' complaint.

Defendant contends that the trial court erred in admitting Plaintiffs' Exhibit 54 in evidence and also erred in denying admission to Defendant's Exhibit 5.

The contracts entered into by the individual plaintiffs with defendant provided:

"Seller agrees that it will improve the above real estate with the apartment building and apartment unit substantially in accord with the plans and specifications known as "DUNBAR'S CONDOMINIUM

PLAN" NO. (*blank*), by (*blank*), architect, which have been examined by Buyer and are on file in Seller's office."

The first blank on all but nine of the 51 contracts provided, "6302." Of the other nine, one provided, "6301," one was left blank, and seven provided, "Mulford House." The second blank on all provided "William G. Karson." The earliest of the 51 contracts was dated June 11, 1963, and the latest was dated August 8, 1964. Both Plaintiffs' Exhibit 54 and Defendant's Exhibit 5 were labeled "Dunbar Job # 6302."

On August 16, 1968, during pre-trial discovery plaintiffs caused a supplemental interrogatory to be served upon defendant which stated:

"List and describe, or otherwise identify, each and every set of plans and/or specifications prepared by or for Defendant for the construction and erection of the premises in question at 250 Ridge Avenue, Evanston, Illinois (Mulford House), the subject matter of this lawsuit, which are or may be designated, in whole or in part, as Plan 6302 or Dunbar Job Number 6302; and state the exact present location, if known, of each set of plans and/or specifications and the names and addresses of all persons having such documents in their possession or under their control."

Defendant answered the supplemental interrogatory stating:

"(a) Original tracings in possession of Albert R. Belrose, 5625 North Milwaukee Avenue, Chicago, Illinois; (b) one set of drawings in possession of plaintiffs; (c) Sheets A-1, M-1, M-2, M-3, M-4, E-1, E-2 and E-3 in possession of First Federal Savings of Berwyn; (d) permit set of plans in possession of Evanston, Illinois Building Department."

On May 12, 1969, plaintiffs caused a notice to produce, pursuant to Supreme Court Rule 237 (b), Ill. Rev. Stat. 1969, ch. 110A, par. 237 (b), to be served upon defendant, which in its pertinent parts provided:

"Plaintiffs will also require production at the commencement of trial of the following documents:

\* \* \*

(2) All copies of plans and specifications known as Plan Number 6302 referred to in the Purchase Contract between defendant and plaintiff, including but not limited to, the following:

(a) The permit set;

(b) The bid set;

(c) The construction contract set;

(d) The contract set;

(e) All changes and amendments to any of the above plans.

For the purpose of this notice 'plans' shall also include blueprints and drawings of any kind or nature pertaining to the premises."

Defendant failed to produce any of the plans and specification sets described above.

The cause came on for trial on May 15, 1969. During the course of plaintiffs' case, Norman Pentz one of the 51 plaintiffs was called to testify. He testified that Plaintiffs' Exhibit 54 was a set of plans of Mulford House which had been given to him and the Board of Managers in October, 1964 by Hy Pawlow, sales manager and officer of defendant corporation at defendant's office. He further testified that Pawlow stated that Plaintiffs' Exhibit 54 was "the [set of] plans for the building" and that "this was all there was for the construction of the building." He also testified that at a subsequent meeting Mr. Rosenthal of defendant corporation stated that plaintiffs should have never been given Plaintiffs' Exhibit 54. Thereupon, plaintiffs offered Plaintiffs' Exhibit 54 in evidence and the trial court received them in evidence overruling defendant's objection of improper foundation.

After the close of plaintiffs case, defendant called Albert R. Belrose as its first witness. Belrose was the independent architect who drew the architectural drawings for Mulford House. He testified that Defendant's Exhibit 5A comprised his original tracings of Mulford House which he had produced for inspection by plaintiff's counsel at the time his deposition was taken. He further testified that Defendant's Exhibit 5 was an exact blue-line copy of Defendant's Exhibit 5A which had been used in the construction of Mulford House, but that he had not supervised construction. Thereupon, defendant offered Defendant's Exhibit 5 in evidence. However, the trial court sustained plaintiffs' objection upon the ground that sufficient foundation had not been laid.

Defendant then called William G. Karson, defendant's house architect, who testified that he had supervised construction of Mulford House and that Defendant's Exhibit 5 was used to construct the building. Thereupon, defendant again offered Defendant's Exhibit 5 into evidence. Plaintiffs objected on two grounds. The first was insufficient foundation. The second was that defendant had failed to produce the plans pursuant to plaintiff's Rule 237 (b) notice. The trial court ruled that sufficient foundation had now been laid, but that since defendant had failed to produce the plans upon plaintiff's notice, the court would not now admit them in evidence.

An examination of Plaintiffs' Exhibit 54 and Defendant's Exhibit 5 reveals that both purport to be the plans for Mulford House. However, neither of the sets are dated except for revision dates which appear at the bottom of the individual pages. Defendant's Exhibit 5 consists of 15 pages. Plaintiffs' Exhibit 54 consists of the same 15 numbered pages but also includes an irregular page numbered R1.

A comparison of the contents of the two sets of plans reveals that they differ, as pertinent to the allegations of plaintiffs' complaint and the award, as to four major items:

(1) Page M1 of plaintiffs' set specifies insulation of water pipes whereas page M1 of defendant's set does not.

(2) Page M1 of plaintiffs' set also differs with M1 of defendant's set as to the specifications on "Ventilation Notes."

(3) Page M2 of plaintiffs' set calls for a corridor supply unit capable of cooling the common hallways whereas page M3 of defendant's set does not.

(4) Page A7 of plaintiffs' set differs from page A7 of defendant's set on the manufacture and model of the sliding balcony doors.

The trial court awarded plaintiffs a recovery of $19,460 on the first three of these four items. However, the court did not allow recovery on alleged substitution in the fourth, but did award $1,550.00 for defective installation of the sliding doors.

Plaintiffs' Exhibit 66 is also a set of blueprints labeled "Dunbar Job #6302." This set of plans had been in the possession of the First Federal Savings of Berwyn. While Plaintiffs' Exhibit 66 does not include page A7, it does include pages M1 and M2. Both of these latter pages on Plaintiffs' Exhibit 66 correspond to the specifications on Plaintiffs' Exhibit 54, but not to Defendant's Exhibit 5.

Defendant contends that the trial court erred in admitting Plaintiffs' Exhibit 54 in evidence since plaintiffs failed to establish a proper foundation. Conversely, defendant contends that the trial court erred in excluding from evidence Defendant's Exhibit 5, since the plans were not in its custody, control, or possession at the time the Rule 237 (b) notice to produce was served.

Defendant maintains that plaintiffs in order to lay a proper foundation were required to show that Plaintiffs' Exhibit 54 was either the set of plans referred to in the contracts or the set of plans used in construction and that plaintiffs failed to show either. Defendant further maintains that the reason for this failure was that the plans were neither the contract set nor the construction set. Defendant reasons that Plaintiffs' Exhibit 54 could not have been the contract set, since some of the pages were revised after execution of the early contracts and that it could not have been the construction set, since Karson, who supervised construction, testified that Plaintiffs' Exhibit 54 was not a set of plans of Mulford House.

Plaintiffs' foundation for their Exhibit 54 consisted of the testimony of Pentz that the set of plans labeled "Dunbar Job # 6302" was given

to him by Pawlow, an officer of defendant corporation; that Pawlow stated "These are your plans for the building"; and that Pawlow stated that nothing else was used in the construction of the building.

■■ We find that Pentz's testimony provided ample foundation for the admission in evidence of Plaintiffs' Exhibit 54. We also find that the foundation was sufficiently broad to admit the set of plans either as the contract or the construction set.

The contract of sale provided that the contract set on Dunbar Job # 6302, Mulford House, was on file in defendant's office. Pentz was at the meeting at defendant's officer when the Board of Managers requested a copy of the plans. Since Pawlow was obviously aware that the Board knew only of the contract set on file in defendant's office, it is sufficient for purposes of foundation that Pawlow represented Plaintiffs' Exhibit 54 as "your plans for the building." Pawlow's further statements with regard to the plans were admittedly in reference to plaintiffs' request for supplemental specifications. However, they also stand as an admission that only these plans had been used in construction.

While defendant contends that the plans were revised subsequent to the time of execution of the early contracts, we note that none of these revisions pertain to the pages directly bearing on the disputed elements of the award. Moreover, some of the pages bear revision dates prior in time to the execution of the first contract which tends to show that the plans were in existence at the time of execution of these early contracts.

Therefore, the trial court properly admitted Plaintiffs' Exhibit 54 in evidence.

Defendant maintains that Defendant's Exhibit 5 was improperly excluded on the ground that defendant did not produce this set of plans pursuant to Rule 237(b) notice to produce. Defendant contends that since Defendant's Exhibit 5 was in the possession of Belrose at the time the notice was served, he was not required to produce and that therefore, the trial court erred in applying the sanction.

Rule 237(b) of the Illinois Supreme Court Rules, Ill. Rev. Stat. 1969, ch. 110A par. 237(b) provides:

"The appearance at the trial of a party or a person who at the time of the trial is an officer, director or employee of a party may be required by serving the party with a notice designating the person who is required to appear. *The notice also may require the production at the trial of documents or tangible things.* If the party or person is a nonresident of the county, the court may order any terms and conditions in connection with his appearance at the trial that are just, including payment of his reasonable expenses. *Upon a failure to comply with*

*the notice, the court may enter any order that is just, including any order provided for in Rule 219(c) that may be appropriate."* (Emphasis supplied).

While the provisions of Rule 237(b) relevant to this case have not been previously construed, defendant suggests an analogy to Illinois Supreme Court Rules 204 and 214 and Rule 34 of the Federal Rules of Procedure. Pursuant to this analogy defendant cites the following case law applicable to the aforementioned Rules:

*Monier v. Chamberlain* (1966), 35 Ill.2d 351; *Traub v. United States* (D.C. Cir. 1955), 232 F.2d 43; *In re Rivera* (S.D.N.Y. 1948), 79 F.Supp. 510; *Fisher v. United States F. & G. Co.*, 246 F.2d 344 (7th Cir. 1957); *United Mercantile Agencies v. Silver Fleet Motor Express* (W.D. Ky. 1941), 1 F.R.D. 709; and *Thomas French & Sons v. Carleton Venetian Blind Co.* (E.D.N.Y. 1939), 30 F.Supp. 903. These cases stand for the proposition that a party cannot be compelled to produce that which is not in his custody, possession or control.

We deem sound defendant's analogy to the aforementioned Rules and cited cases. However, Plaintiffs contend that defendants were in "possession, custody, or control" of the plans within the meaning of the above cited cases. Specifically, plaintiffs contend that the mere fact the plans were in the possession of the independent architect Belrose at the time defendant was served notice does not negate the fact that they were in defendant's power. Plaintiffs reasoning is based upon 6 C.J.S. *Architects* § 10, p. 303 which provides:

"As a general rule, one who employs an architect to prepare plans and specifications for a building and pays him therefore becomes the owner of the plans. An exception, of course, arises where the contract specifically states that all plans and specifications are considered the property of the architect and are to be returned to him. A custom among architects that the architect retains the plans after they have been paid for, unless he is employed in the erection of the building, has been held not to affect the ownership of the plans * * *"

Plaintiffs then cite cases wherein the party was required to produce, even though possession of the sought documents was not in the party litigant but in third-parties; litigant's corporate subsidiary (*Hanseth & Co. v. Muhle-Gass-Dexter* (S.D.N.Y. 1963), 33 F.R.D. 332); Federal government which possessed litigant's income tax records (*Tallifsen v. Phillips* (D. Mass. 1954), 16 F.R.D. 348); *Reeves v. Pennsylvania Ry. Co.* (D. Del. 1948), 80 F.Supp. 107); and *Paramount Film Dist. Corp. v. Ram* (E.D.S.C. 1950), 91 F.Supp. 778); State of New York which possessed documents of litigant U.S. Government (*U.S. v. Weinblatt* (S.D.N.Y.

1951), 11 F.R.D. 398); litigant's attorney (*Lefener v. Defkowitz*, 178 N.Y.S.2d 172, aff'd 176 N.Y.S.2d 728); litigant's lending institution (*Mostby v. Wright*, 177 La. 1002); litigant's insurer (*Bough v. Lee* (S.D.N.Y. 1939), 29 F.Supp. 498); and Army Air Force which upon orders or direction would furnish litigant the documents. (*Michael v. John Hancock Ins. Co.* (1959), 138 Colo. 450.

Defendant replies to plaintiffs' assertions by citing 1 Am. Jur. Legal Forms, Architects § 1:1365.1 (1969 cum. supp.) p. 239, wherein an architect's form contract provides:

"All of the detailed plans, working drawings, specifications and engineering computations and calculations are instruments of service and remain the property of the Architect."

However, the trial record discloses no showing that such a clause was utilized in the agreement between Belrose and defendant. Moreover, defendant does not contend that it was precluded from making such a showing, if in fact the contract contained a similar clause.

In *Schwimmer v. U.S.*, 232 F.2d 855 (8th Cir. 1956), *cert. denied*, 352 U.S. 833, the court in construing Federal Rule 34 stated at page 860:

"The law recognizes no distinction between constructive possession, with control, and physical possession, as a basis for a subpoena to compel production, so that such process directed to and served upon an owner, who is in constructive possession and control, is as legally capable of commanding the production of his books and papers as is one against a third party, who is in physical possession of them for him. The question of whether to issue a subpoena against the owner or against the third party thus ordinarily is in such a situation merely one of procedural choice and convenience."

It is also significant to note that the cross-references to Smith-Hurd Annot. Stat. (1967) ch. 110A § 237 (b) cite chapter 51 § 9 which provides:

"The several courts shall have power, in any action pending before them, upon motion, and good and sufficient cause shown, and reasonable notice thereof given, to require the parties or either of them, to produce books or writings in their possession or power which contain evidence pertinent to the issue."

■■ We find that at the time of the service of notice Defendant's Exhibit 5, while not in defendant's possession, was in its power. Therefore, the trial court acted well within its discretion in refusing to admit Defendant's Exhibit 5 in evidence, the defendant having failed to produce pursuant to the Rule 237 (b) notice.

Defendant next contends that the trial court improperly awarded damages for the sliding doors installation.

Plaintiffs' Bill of Particulars listed the following as defect in material and construction:

"54 sliding horizontal glass doors and fixed windows not as specified."

Plaintiffs' witness testified that the difference in price between the brand of door referred to in the plans and the brand actually installed amounted to $3,100.00. Several of the plaintiffs further testified that they were required to replace rollers on the doors and that they had experienced difficulties, including drafts, condensation and icing. However, plaintiffs offered no evidence as to the cost of repairing the alleged defects in the doors installed.

■■ The trial judge found that while the plans referred to a specific manufacture of sliding glass doors, it was for the purpose of dimensions only and not for specifications as to make or model. Therefore, the trial court disallowed plaintiffs claim as to inferior substitution of the sliding doors. However, based on the testimony of some of the plaintiffs as to difficulties encountered and the resultant expenses incurred in remedying the deficiencies in the doors installed, the trial court awarded plaintiffs $1,550.00, or exactly half the difference value as testified to on the allegation of inferior substitution. In so doing, we find the trial court erred. Plaintiffs presented no evidence upon which to base the award. Where the court compromises the damages and does not base them on evidence, it is error. *Croft v. Lamkin* (1969), 112 Ill.App.2d 321.

Defendant next contends that the trial court erred in refusing to permit Belrose to testify as to the costs of roof repair.

Plaintiffs' witness Ludes testified that he has been in the roofing business for over 40 years; that he had inspected the roof of Mulford House; and that he estimated the cost of repair to be $11,030.00, of which $9,702.00 represented the cost of repairing and recoating the roof with a new coat of pitch.

Belrose, the independent architect, testified on behalf of defendant. During the course of his direct examination the following ensued:

"Q. Mr. Belrose, as an architect, are you familiar with the prices charged by roofers for doing roofing work?

A. Yes, I am.

Q. In your practice of your profession, is it necessary for you to be apprised of the various costs of construction in certain fields?

A. Yes, it is.

Q. Are you familiar with the term of, a square, as used in roofing?

A. Yes, I am.

Q. What does that mean?

A. If I am correct, I believe it means ten by ten.

Q. Do you know what the going rate is in the Chicago area with pitch after brushing up the gravel and recoating the roof and then regraveling it?"

At this point plaintiffs objected on the grounds that defendant had not established Belrose's qualifications to testify as to the going rate of recoating roofs. The trial court sustained plaintiffs' objection. Defendant's counsel then related that Belrose would have testified that the going rate was $20.00 per square.

Defendant maintains that there was sufficient foundation establishing Belrose's expertise to allow him to testify as to the going rate of recoating roofs. However, plaintiffs argue that the testimony if given would have been irrelevant, and secondly that there was insufficient foundation as to Belrose's expertise.

■■ As to the issue of relevancy, plaintiffs reason that Belrose's proposed testimony pertained only to recoating costs whereas their expert Ludes testified to roofing repairs other than recoating in estimating the damage at $11,030.00 and that therefore, Belrose's estimate would be irrelevant. We find no merit in this contention. The proposed testimony of Belrose pertained to the going rate for recoating the roof, an element of alleged damage as testified to plaintiffs' witness Ludes. Moreover, Ludes had testified to the separate elements of roof repair involved relating that the cost of recoating would total $9,702. The proposed testimony was obviously relevant to the issue of damage as related to the single item of recoating the roof.

We similarly disagree with plaintiffs' second argument as to the purported failure to establish Belrose's qualifications as an expert on roofing costs.

● 6-8 The determination of an expert witness' competency is within the discretion of the trial court. (*Nicte-Ha v. Teichert* (1970), 119 Ill.App.2d 336, 346.) Expert testimony is admissible where the witness has peculiar knowledge or experience beyond that of the average layman which can aid the court in making a determination of the issues. *Buckler v. Sinclair Refining Co.,* (1966), 68 Ill.App.2d 283, 293.

Belrose testified that in the course of his profession it was necessary for him to be apprised of the various costs of construction and that he was familiar with the prices charged for roofing work. Such knowledge is not common to the average layman. While Belrose's qualifications might not have been as impressive as that of plaintiffs' witness Ludes, they clearly met the standard of an expert witness. The weight to be attached such testimony was a question for the trier of fact. (*Buckler, supra.*) In view of the foregoing, we find that the trial court abused its

discretion in refusing to allow Belrose to testify as to the going rate of roof recoating.

Therefore, we reverse that part of the judgment pertaining to the $11,030.00 award for roof repair and remand that part of the cause for new trial. Also, we reverse without remand that part of the judgment pertaining to the $1,550.00 award for defective sliding door installation. The remainder of the judgment is affirmed in the amount of $24,362.45.

Reversed and remanded in part; reversed in part; and affirmed in part.

LEIGHTON, P. J., and McCORMICK, J., concur.