LINDA HELLIGE, Plaintiff-Appellee, *v.* CHARLES B. HELLIGE, Defendant-Appellant.

Fifth District   No. 76-412

Opinion filed June 28, 1977.

George J. Moran, Jr., of Granite City, for appellant.

Ralph J. Derango, of Belleville, for appellee.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:
This is an appeal from a denial by the circuit court of St. Clair County of a section 72 petition (Ill. Rev. Stat. 1973, ch. 100, par. 72). It was filed by defendant, Charles B. Hellige, to set aside and vacate a property settlement and support agreement that was incorporated in a decree of divorce entered August 29, 1975, in favor of defendant Charles Hellige's wife, plaintiff-appellee Linda Hellige. Appellant Charles Hellige was not represented by counsel during the divorce, and did not appear at the hearing. He did sign an entry of appearance on August 13, 1975, which incorporated the property and support provisions he now protests. The defendant argues two grounds in support of his petition to vacate. He first claims that the agreement was procured by fraud. He also urges that the agreement was not reasonably fair in light of the station in life and the circumstances of the parties.

Additionally, the defendant appeals from the trial court's order holding him in contempt of court and sentencing him to a 30-day jail term.

Charles and Linda Hellige were married in 1964, and had three children by that marriage. On July 4, 1975, the defendant left the family home after a disagreement with his wife, and moved in with his paramour. The next day he voluntarily admitted himself to a hospital and stayed there for a week. When he was released, he returned to his paramour's home,

where he established residence. He was working at that time at his job as a field representative (salesman) for an insurance company. He and his wife talked over the phone during this period, and defendant continued to support the family.

The plaintiff filed for divorce on July 15, 1975, and the defendant was served with a copy of the summons in that action on July 18, 1975. The defendant conversed by phone at least once with the plaintiff's attorney regarding the property agreement. The defendant negotiated directly with the plaintiff for a $12,000 share of the equity in the house if it were sold.

The plaintiff's attorney mailed an entry of appearance to the defendant on July 31, 1975, which incorporated the property and support agreement. The defendant testified that he received the document and read it. He also stated that he told the plaintiff's attorney that he would not sign it until he had a lawyer look at it. On August 7, 1975, the defendant informed the plaintiff's attorney's secretary that he had arranged to meet with an attorney, would do so on August 11, 1975, and would get back to them. The defendant then returned to the plaintiff's attorney's office on August 13, 1975, and signed the entry of appearance and incorporated agreement. At that time, the defendant asked that he be advised of the hearing date, and he did receive a letter dated August 13, 1975, stating that the final hearing was set for August 29, 1975, at 9 a.m.

The decree was entered in the case August 29, 1975, and the plaintiff's attorney mailed a copy of the decree to the defendant on September 2, 1975.

The defendant was arrested September 21, 1975, for harassing the plaintiff. He retained his first attorney of record September 22, 1975, for the dual purpose of representing him in the criminal proceedings charging him with disorderly conduct and trespass, and to review the divorce decree to see if anything could be done to modify or gain some relief from its terms. However, no motion for relief was filed at that time.

The defendant next appeared before the court in November 1975 to respond to the plaintiff's petition for a rule to show cause, for injunction, and for limitation of visitation. As a result of the hearing, visitation was modified, and both parties were ordered to cease harassing the other. The defendant was represented by his second attorney of record at this hearing.

The defendant filed his petition to set aside the original decree on February 24, 1976. A hearing on that petition and on the plaintiff's second petition for an order to show cause why he should not be held in contempt for striking, beating, choking and kicking the plaintiff on May 30, 1976, and May 31, 1976, was held June 8, 1976. The court found the

defendant in contempt and sentenced him to 30 days with a stay of sentence if he observed the injunction terms faithfully for one year. The sentence would be permanently stayed at the end of one year.

The defendant's first contention on appeal is that the original decree was obtained by fraud, and that he was mislead by the plaintiff to believe that the parties were going to reconcile. She had filed two previous times, and later reconciled, and the defendant testified that he thought that this would happen again. For that reason, the defendant argues, the decree was obtained fraudulently, even though he was made aware of the progress of the action, read the entry of appearance before he signed (after having the same for 13 days), and negotiated some terms of the agreement dealing with equity in the house. The defendant also argued that the plaintiff's attorney's secretary called him, told him he had to sign some papers (the entry of appearance), and misrepresented the effect and terms of the same to get him to sign. Also, the defendant alleges in his petition, and testified at trial, that he did not have notice of the final hearing date. After being confronted by the plaintiff's attorney with a letter dated August 13, 1975, the defendant admitted receiving the letter which set forth the date of the hearing.

In *Stoller v. Holdren* (1964), 47 Ill. App. 2d 81, 82-83, 197 N.E.2d 492, the court said of section 72 relief:

> "To vacate a valid judgment after 30 days from its entry under Sec. 72 of the Civil Practice Act defendants must show reasonable excuse for failure to defend within the appropriate time or that they were prevented from so doing by the fraud, act or concealment of the opposing party, accident, excusable mistake or one or more of the grounds traditionally relied upon for equitable relief from judgments. The defendants must also state ultimate facts showing a meritorious defense. This section cannot be used to avoid the consequence of a defendant's negligence."

In *Leach v. Leach* (1975), 26 Ill. App. 3d 241, 244, 325 N.E.2d 19, the court discussed the general nature of the section 72 remedy when it stated:

> "The section 72 remedy (Ill. Rev. Stat. 1973, ch. 110, par. 72) is principally designed to give relief to those whose interests are inequitably treated before a trial court, and such relief may be sought up to 2 years following judgment. As stated by the court in *Elfman v. Evanston Bus Co.*, 27 Ill. 2d 609, 613, 190 N.E.2d 348 (1963):
>
>> ' * * * petition filed under section 72, such as we have here, invokes the equitable powers of the court, as justice and fairness require, to the end that one may not enforce a

default judgment attended by unfair, unjust or unconscionable circumstances.'

It is true, also, that such petition is not intended to relieve a party from the consequences of his own mistake or negligence. *Brockmeyer v. Duncan*, (1960) 18 Ill. 2d 502, 505, 165 N.E.2d 294 (1960)."

The court in *Leach* did reverse the trial court, and grant relief where it appeared that one party had made an overt misrepresentation to the other regarding child custody, support, and the nature of the document she was signing, which did not state the terms of the settlement. No notice was given to Mrs. Leach of the final hearing date. She·requested relief within six days after she received her copy of the decree.

■■ ■ The *Leach* case is distinguishable on its facts from the case before us. It does not appear from the record, and the facts quoted above, that the plaintiff made any misrepresentations to the defendant which would justify vacating this decree. In *Roth v. Roth* (1970), 45 Ill. 2d 19, 23, 256 N.E.2d 838, the supreme court said:

"A misrepresentation in order to constitute a fraud must consist of a statement of material fact, false and known to be so by the party making it, made to induce the other party to act, and, in acting, the other party must rely on the truth of the statement. (*Roda v. Berko*, 401 Ill. 335.)"

The plaintiff's behavior does not appear fraudulent. The defendant has not sustained the burden of showing by clear and convincing evidence that there was fraud, and that is the burden of proof where fraud is alleged. *Lagen v. Lagen* (1973), 14 Ill. App. 3d 74, 302 N.E.2d 201.

The defendant's actions before the decree was entered do not indicate that he misunderstood or was mislead as to the divorce proceedings. His actions after the decree was entered do not substantiate his arguments. He did consult an attorney within 30 days of receiving the copy of the decree, but did not seek any relief from the decree. He consulted another attorney within three months of receiving the decree with regard to the plaintiff's first petition for a rule to show cause. As a result of that hearing, the decree was modified regarding visitation, but again the defendant did not ask for relief under section 72, or otherwise. Finally, in February of 1976, almost six months, two hearings and three lawyers later, the defendant complains of fraud.

■■ Similarly, we find no merit in the defendant's contention that the decree is not reasonably fair in light of the station in life and the circumstances of the parties. The rule to be applied regarding fairness and sufficiency of a property settlement is stated generally in *James v. James* (1958), 14 Ill. 2d 295, 305, 152 N.E.2d 582, where the court said:

"The law is well settled that parties to an action for divorce may adjust between themselves the amount required for the future support of a wife by a husband, and that they may, if such a course is desired, voluntarily effect a settlement of their property interests. (*Smith v. Smith*, 334 Ill. 370; *Walters v. Walters*, 409 Ill. 298.) When such agreements are made a part of the divorce decree, they become merged in such decree and are regarded as contracts between the parties which, if fairly made and in good faith, will be accepted and enforced by the courts. (*Adler v. Adler*, 373 Ill. 361; *Maginnis v. Maginnis*, 323 Ill. 113.) They will, however, be set aside and vacated for fraud or coercion practiced by either party, or if contrary to any rule of law, public policy or morals. (*Smith v. Smith*, 334 Ill. 370; *Swannell v. Wilson*, 400 Ill. 138.) As is observed in *Hamlin v. Hamlin*, 230 N.Y.S. 51, 56-57, contracts of such nature are, in theory, in furtherance of the duty incumbent upon a husband to support his wife. Thus the interest of the public, as well as that of the parties, is involved, and public policy requires that such contracts be not only free from taint of actual fraud and coercion, but also reasonably fair and sufficient, having regard to the station in life and the circumstances of the parties. To the same effect is *Helvering v. Leonard*, 310 U.S. 80, 84 L. Ed. 1087, 1092, where it is said that property settlements in divorce cases 'may be remade by the court not only where an ordinary contract may be set aside but also where they are unfair, inequitable and unjust.' [Citations.]."

See also *Guyton v. Guyton* (1959), 17 Ill. 2d 439, 161 N.E.2d 832; *Crawford v. Crawford* (1976), 39 Ill. App. 3d 457, 350 N.E.2d 103.

■■ In the agreement before us, the defendant is obligated to pay $525 per month to his former wife as child support, $15 per month to his former wife for her attorney's fees, and pay off some debts of the family. The plaintiff obtained the family car and the debt of $2,000 which went with it, and the marital residence and its $36,000 mortgage. The defendant is also obligated to pay the premiums for certain life insurance policies and health insurance for the children. The defendant's gross income is $1,100 per month, which amounts to a net take-home pay of approximately $904 per month. The plaintiff works and contributes to the family's support.

Under the facts of this case, it does not appear that the property settlement is "unfair, inequitable and unjust." Similar agreements giving a wife half of a husband's salary have been upheld, even where the husband assumed additional family debts. See *Condy v. Condy* (1946), 328 Ill. App. 8, 65 N.E.2d 219.

The argument that the property agreement does not reflect the station

in life and circumstances of the parties is incorrect. Prior to the divorce, the defendant maintained a long-standing relationship with another woman, and to some extent expended money on her behalf. There was testimony taken of the defendant's weekend absences from the family home. Each of the three times he left the family home, and the plaintiff filed for divorce, the defendant would establish residence with his paramour, and maintain both households. If the defendant had reached the station in life where he could afford to maintain two families prior to the divorce, he can do the same after the decree is entered.

There is also some conflict in the testimony of the defendant and that of his new wife, as to the expenses of the new household. The defendant testified he spent $260 per month for food. The defendant's present wife testified that it was between $120 and $160 per month. There was also some uncertainty as to the amount of utilities, automobile expense and other items. The fact that he has seen fit to undertake new family obligations does not in any way lessen his duty to provide for his former family. In view of all that has been discussed, it does not appear that the decree should be modified or vacated for failing to adequately represent the station in life and circumstances of the parties.

The last issue is whether the court's order of June 8, 1976, holding the defendant in contempt for indirect contempt is adequate in view of the fact that the written order does not state explicitly the facts relied upon as the basis for the finding of indirect contempt. The order states as follows:

"That the defendant is hereby sentenced to 30 days in the county jail of St. Clair County for wilful contempt. Sentence is stayed provided defendant observes the injunction faithfully for one year from this date. After that period sentence is permanently stayed."

In *Kenwick v. Kenwick* (1963), 41 Ill. App. 2d 108, 110 190 N.E.2d 486, the court discussed the distinctions between the requirements and basis for direct and indirect contempt. The court said:

"Direct contempt, that is, contumacious acts committed in court and in the presence of the judge, which he observes and of which he thus has personal knowledge, may be adjudged and punished in a summary manner without prior notice, written charges, plea, issue or trial. (*People v. Berof*, 367 Ill. 454, 11 N.E.2d 936 (1937); *People v. Sherwin*, 353 Ill. 525, 187 N.E. 441 (1933); *Ex parte Terry*, 128 U.S. 289 (1888).) If the contempt alleged is indirect rather than direct—i.e., 'one which in whole or in an essential part occurred out of the presence of the court and which is therefore dependent for its proof upon evidence of some kind'—then constitutional requirements of due process demand that notice, citation or rule to

show cause be served upon the alleged contemnor. *People v. Sherwin*, 353 Ill. 525, 528, 187 N.E. 441; People v. Gholson, 412 Ill. 294, 299, 106 N.E.2d 333 (1952).

In a direct contempt proceeding, the act having been committed in the presence of the court, evidence is unnecessary and no record need be made. (*People ex rel. Owens v. Hogan*, 256 Ill. 496, 499, 100 N.E. 177 (1912).) But the accused has a right of appeal, and it is therefore necessary for the court to enter a written order, setting forth fully, clearly, and specifically, the facts out of which the contempt arose, so that the reviewing court may determine if the committing court properly entered the order. (*People v. Rongetti*, 344 Ill. 107, 176 N.E. 292 (1931); *People ex rel. Andrews v. Hassakis*, 6 Ill. 2d 463, 129 N.E.2d 9 (1955)." 41 Ill. App. 2d 108, 110-11, 190 N.E.2d 486.

■■ The purpose, then, of requiring the trial court to set out the facts constituting contempt in a direct contempt situation is to furnish a basis for review by the appellate court. In an indirect contempt case, the appellate court has the benefit of the petition for an order to show cause why the defendant should not be held in contempt. In the instant case, we have the testimony of both the plaintiff and the defendant's present wife concerning the events of May 30 and May 31, 1976. We have the record on appeal containing the November 1975 injunction, which prohibits each party from harassing or fighting with the other party. The order of the trial court refers to the November 1975 injunction, and specifically stays the sentence provided the defendant abides by the terms of the injunction.

The record and the order taken together with the pleadings are sufficient. Accordingly, the judgment of the circuit court of St. Clair County is affirmed.

Affirmed.

CARTER, P. J., and JONES, J., concur.