*In re* MARRIAGE OF AURELIA D. EARHART, Petitioner-Appellee, and DONALD E. EARHART, Respondent-Appellant.

First District (3rd Division) No. 84—615

Opinion filed October 29, 1986.

470

McNAMARA, J., concurring in part and dissenting in part.

James H. Wolf, of Chicago, for appellant.

John B. Clarke, of Chicago, for appellee.

PRESIDING JUSTICE RIZZI delivered the opinion of the court:

Respondent, Donald Earhart, appeals from those portions of a judgment for dissolution of marriage relating to the division of marital property and child support. On appeal Donald claims the trial court erred in (1) refusing to permit his witness to testify as an expert regarding the value of Donald's pension; (2) denying his request for a continuance and (3) ordering Donald to pay $350 per month as child support for the parties' minor child.

Donald and Aurelia Earhart were married January 25, 1969. A petition for dissolution of marriage was filed by Aurelia on September 9, 1981. A judgment for dissolution of marriage was entered by the trial court on November 9, 1983. Donald subsequently filed a motion for reconsideration on December 9, 1983. The motion was denied. This appeal followed. We affirm.

The Earharts were married for 14 years and have one child, Christopher, age 15. Aurelia is an employee of the Suburban Bank Group in Rolling Meadows. Donald is employed by the United States Postal Service. The parties' major assets are the marital home and Donald's pension with the postal service.

With respect to the value of Donald's pension, Aurelia called Melton Q. Ellenbui as her expert witness. Ellenbui testified that he is a consulting actuary employed by A.S. Hansen Consulting Actuarial Firm. Ellenbui also testified that he has been an actuary for over 32 years and has primarily worked in the pension-plan area. The witness further testified that throughout his career he has evaluated future obligations, including pensions, to determine their present worth and he presently reviews actuarial evaluations and the calculations of other A.S. Hansen employees. Ellenbui then proceeded to explain how he determined the present value of Donald's pension to be $325,500 and estimated the marital attribution at $141,400.

Thereafter, Donald called John W. Damisch, an attorney, as his expert witness to testify regarding the present value of his pension. Damisch was questioned regarding his expertise in the area of pension valuation. The witness initially testified that he is an attorney who has been engaged in the practice of law since 1950. Damisch also testified that he has handled a considerable number of divorce cases where a pension fund has been involved. Damisch additionally testified that he had attended seminars sponsored by the Chicago Bar Association committee on matrimonial law and had studied the book Business Analysis I by Texas Instruments, which explains how to cal-

culate compound interest and find the present value of money. Damisch also testified that he took a basic computer course in 1980 and another course in 1983 but did not use a computer to value Donald's pension. Damisch further testified that he had examined a pamphlet containing questions and answers concerning Federal civil service retirement law and had been advised of Donald's date of birth, date of service in the armed forces, date of employment with the postal service, date of marriage, and present annual gross rate of compensation. Damisch also emphasized that he is not an actuary, and expressed concern about an earlier discussion between the parties' counsel and the trial court wherein he was referred to as an actuary.

Following the testimony set forth above, Damisch was presented with a hypothetical question comprised of the stipulated facts concerning Donald's date of birth, beginning of government service, gross income, the dates of Donald's marriage and divorce, and his age for retirement. The witness was then asked to render his opinion on the present fair cash market value of Donald's pension. At this point, the following colloquy occurred:

"MR. CLARKE: Objection your Honor.

THE COURT: Sustained.

MR. SOLZAN: Judge, if I might, I am seeking to elicit from the witness the basic valuation that we are getting to in this case.

THE COURT: I know what you are trying to elicit.

\* \* \*

THE COURT: Are you asking me to put this witness on as an expert?

MR. SOLZAN: That's correct.

THE COURT: I don't think his qualifications at this point indicate to me he can testify as an expert. \*\*\*

Now, if you want him to testify other than as an expert that is something else, but I am sustaining the objection based upon the fact that he has not been shown to be an expert in this field.

\* \* \*

THE COURT: With all due respect to Mr. Damisch I am sure Mr. Damisch understands that I cannot allow him to testify as an expert on pensions. He has had a lot to do with pension funds in the practice of law, in the practice of law in which he engages as an adversary but that \*\*\* does not qualify him as an expert.

I must sustain the objection. He cannot testify as an expert.

MR. SOLZAN: Judge, is the ruling that we must present an 'actuarian' to be qualified to give an analysis?

THE COURT: I gave my ruling. I said you have not qualified him to be an expert in pension funds. There has not been a sufficient foundation laid for this Court to allow him to testify in this regard. I am not going to keep ruling over and over— Judge, is that what you are saying—I have ruled. I said what I have said. I will stand on the record for what I said and that is my ruling.

With all respect, I cannot allow Mr. Damisch to testify as an expert in this field.

MR. SOLZAN: Then the Court is indicating you will not accept any testimony?

THE COURT: I think Mr. Clark is correct, you did call him as an expert and I don't feel he has been qualified.

MR. SOLZAN: Well, in light of the Court's ruling, obviously, we cannot proceed at this point."

Counsel for Donald thereafter rested his case.

■■ Donald initially argues that, based on the testimony of Damisch, the trial court erred in refusing to qualify Damisch as an expert witness. We disagree. "Whether a witness is competent to give an expert opinion is a question of fact for the trial court, and the court's determination will be disturbed only upon a clear showing of an abuse of discretion." (*Tuttle v. Fruehauf Division of Fruehauf Corp.* (1984), 122 Ill. App. 3d 835, 840-41, 462 N.E.2d 645, 651.) A witness may be qualified as an expert based on knowledge acquired from study or experience or a combination of both. The question of an expert's qualification to testify as to his opinion largely depends on whether the witness discloses sufficient knowledge of the subject matter to the court. *In re Marriage of Milovich* (1982), 105 Ill. App. 3d 596, 610, 434 N.E.2d 811, 822.

Our review of the record shows that, while Damisch testified concerning his background as a lawyer and his involvement as a lawyer in numerous cases where pension funds were an issue, his testimony is unclear as to whether he had actually determined the present value of a pension fund similar to the one at issue here. Damisch initially testified only that he "*probably* [has] done pension evaluations." (Emphasis added.) Subsequently, he stated that he has "had occasion to examine and value *** [pensions] for clients and [the] office." Damisch never testified to the approximate number of times that he had made such valuations. Furthermore, while Damisch testified that he attended seminars sponsored by the Chicago Bar Association com-

mittee on matrimonial law and was enrolled in a computer course at Northwestern University, the record fails to disclose in what way the programs provided him with sufficient knowledge to establish actuarial data on Donald's pension.

Donald further argues that the trial court refused to qualify Damisch as an expert witness because he was not an actuary. We do not agree. It is clear from our examination of the record that the trial court did not preclude Damisch from testifying as an expert witness because he was not an actuary as Donald mistakenly argues. Rather, the trial court correctly determined that the witness had not yet been properly qualified as an expert at the time his opinion on the valuation of Donald's pension was sought. Donald's counsel had the opportunity to further question Damisch and attempt to qualify him as an expert. However, Donald's counsel made no further attempt to qualify the witness. Instead, counsel chose to rest his case. Additionally, Donald's counsel failed to make an offer of proof for the record indicating any other information Damisch could provide regarding his qualifications. Without such an offer, we are unable to ascertain the nature and significance of the excluded testimony. *In re Marriage of Milovich* (1982), 105 Ill. App. 3d 596, 609, 434 N.E.2d 811, 822.

■ Finally, Damisch's affidavit in support of Donald's motion for reconsideration, which sets forth testimony Damisch would have given concerning the present value of Donald's pension and his method of valuation, neither substitutes for, nor is the equivalent of, an offer of proof. We therefore cannot say that, based on the testimony before the trial court, the court committed a clear abuse of discretion in determining that Damisch had not yet been qualified as an expert. Accordingly, we find no error in the trial court's refusal to allow the witness to testify as an expert.

■■ ■ Donald next assigns as error the trial court's denial of his request for a continuance following the court's decision that Donald's counsel had failed to qualify Damisch as an expert witness. The decision to grant or deny a motion for a continuance is addressed to the sound discretion of the trial court and should not be disturbed on appeal unless there has been an abuse of discretion. (*In re Marriage of Kundit* (1982), 107 Ill. App. 3d 310, 317, 437 N.E.2d 777, 782.) A party seeking a continuance must provide the court with particularly grave reasons for a continuance once the case has reached the trial stage because of the potential inconvenience to the witnesses, the parties, and the court. (*Teitelbaum v. Reliable Welding Co.* (1982), 106 Ill. App. 3d 651, 660, 435 N.E.2d 852, 856, citing *Needy v. Sparks* (1977), 51 Ill. App. 3d 350, 358, 366 N.E.2d 327, 337.) This is especially true

when a party seeks a continuance after the other party has produced all of its evidence. *Mann v. State* (1981), 98 Ill. App. 3d 448, 452, 424 N.E.2d 883, 886.

■ Here, Donald's counsel requested "additional time to proceed in this regard." Counsel's request to delay the trial was presented at the virtual completion of the hearings. As such, counsel was required to provide the court with especially grave reasons to support his motion for a continuance. However, the record is devoid of any attempt by Donald's counsel to explicitly advise the court of his reason for a continuance, whether or not he desired to call another expert witness, or the time period he would require to achieve his purpose. Based on this record, and the lack of specificity of the request for the continuance, we do not believe the trial court's denial of Donald's request for a continuance was an abuse of discretion. We further note that Donald's counsel failed to disclose Damisch as his expert witness during the discovery process or at any time prior to calling him to testify. Thus, the court had already accommodated Donald by allowing him to call Damisch to the stand over Aurelia's counsel's objection of failure to comply with discovery.

■ Donald next argues that the trial court's award of child support was excessive and an abuse of discretion. In support of this argument, Donald contends that the trial court erred by only considering his income, and not his expenses, in determining the award of child support. We find no merit in this argument.

A trial court has broad discretion in awarding child support. Consequently, such an award will not be disturbed on appeal absent evidence that a manifest injustice has occurred. (*In re Marriage of Pillot* (1986), 145 Ill. App. 3d 293, 298.) Initially, the record shows that the trial court was presented with extensive evidence regarding the parties' income, expenses, financial capabilities, and the standard of living enjoyed by the parties during their marriage. The court also heard testimony concerning the minor child's age, his corresponding lack of financial resources, and his educational, emotional and physical needs, including his ongoing need for counseling and medical care. All of this evidence was properly considered by the trial court when it determined its award of child support. Ill. Rev. Stat. 1985, ch. 40, par. 505(a); *In re Marriage of Hilkovitch* (1984), 124 Ill. App. 3d 401, 464 N.E.2d 795.

■ ■ Moreover, the record is clear that the trial court gave careful consideration to the other requisite statutory factors, including Donald's expenses, in reaching its decision on this issue. Donald misinterprets the record by arguing that the trial court "unequivocally

stated that it was ignoring *** Donald's expenses." To the contrary, the court specifically stated:

"A careful study of Mr. Earhart's income and expenses, reveals that a large portion of his expenses are for things for which he has no moral or legal responsibility. I am referring to the expenses for the woman who he is living with. He is living at her home and he would have to pay rent wherever he was. However, he has no legal or moral obligation to pay expenses for that woman. When I take into consideration what he must pay for his own child, that is his own child, and that is his first responsibility. His first responsibility is for that child and whatever the expenses are for the woman that he lives with I did not take them into account because those are not morally or legally his responsibility. He can do with his money as he wishes but his first obligation is to his child."

In Illinois the law is clear that the undertaking of new family obligations does not in any way lessen the duty of a divorced husband to provide for his family. (*Hellige v. Hellige* (1977), 50 Ill. App. 3d 209, 215, 365 N.E.2d 220, 225.) Here, while Donald had not married the woman with whom he resided at the time of the hearing, his testimony indicated that he was supporting both her and her children. Consequently, the trial court's refusal to consider the aspects of Donald's expenses relating to his companion and her children was not error and in no way supports Donald's contention that the trial court did not consider his expenses in determining the child-support award.

Donald finally argues that the trial court's denial of his motion for reconsideration was error because it was based on misapprehensions of what occurred at trial. In view of our disposition of Donald's other contentions, it is clear that there is no merit to this argument.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

WHITE, J., concurs.

JUSTICE McNAMARA, concurring in part and dissenting in part:

I concur with the majority holding that the trial court properly determined the amount of child support. I dissent, however, from the majority holdings which affirm the trial court's refusal to qualify respondent's witness Damisch as an expert, and the trial court's denial of respondent's request for a continuance.

I find the trial court erred in not qualifying Damisch as an expert

witness, especially in view of the trial court's confusion regarding the basis upon which it rejected the testimony. I also find that the trial court committed a gross abuse of its discretion in denying the request for a continuance.

An expert witness may acquire special knowledge by study or experience or a combination of both. (*Tuttle v. Fruehauf Division of Fruehauf Corp.* (1984), 122 Ill. App. 3d 835, 462 N.E.2d 645.) Here, Damisch testified that he acquired his knowledge of retirement pensions through both extensive experience and education. The Treasurer of the State of Illinois designated Damisch as a member of the Illinois Judicial Retirement Board for four years. In 1979 Damisch tried a major pension case, which required the compilation and review of all judicial opinions on pension-fund cases in the country. Since then, Damisch has participated in "a considerable number of divorce cases *** [involving] the question of pension funds." In addition, Damisch has been involved in other employer pension-fund cases. He has examined and valued pension funds for clients. Damisch testified further regarding his involvement with large pension funds for Illinois Bell, Peoples Gas, Bell Laboratories, Northern Illinois Gas Company, Illinois Municipal Retirement Fund, Northfield Police Pension Fund, Wilmette Police Pension Fund, Washington National Life Insurance Company, Kane County Employees Pension Fund, Illinois Judicial Retirement Fund, Northwest National Bank Retirement Fund, and numerous other pension-fund plans. Additionally, Damisch has participated in Chicago Bar Association seminars related to pensions; has studied texts regarding computation of compound interest and finding the present value of money, which are necessary skills for valuing a pension fund; and has completed both basic and advanced computer classes designed to make the process of pension valuation faster.

Generally, a trial court allows a witness to testify as an expert if he possesses knowledge or experience beyond that of the average person. (*Atria v. Geist* (1978), 64 Ill. App. 3d 88, 380 N.E.2d 1187.) Damisch's testimony clearly reveals that he possesses knowledge of pensions beyond that of the average person. The threshold test of competency of an expert witness is whether he discloses sufficient knowledge of the subject matter merely to entitle his opinion to go to the trier of fact. (*Roark v. Musgrave* (1976), 41 Ill. App. 3d 1008, 355 N.E.2d 91.) Damisch met this threshold requirement when he established his extensive experience with many large, complex pension funds along with his other valuation experience and training. The extent of the witness' knowledge or degree of experience goes only to the weight of his testimony, not his competency to testify as an ex-

pert. See *Franzen v. Dunbar Builders Corp.* (1971), 132 Ill. App. 2d 701, 270 N.E.2d 118.

An expert possesses special knowledge, and if that testimony will assist the trier of fact, it is error to exclude it. (*Leonard v. Pitstick Dairy Lake & Park, Inc.* (1984), 124 Ill. App. 3d 580, 464 N.E.2d 644.) In the present case, respondent's evidence regarding the value of his pension would have assisted the court as trier of fact in this bench trial, particularly in light of the substantial difference in the valuations offered by the parties. Petitioner's witness valued the pension at $140,000, while Damisch stated in an affidavit supporting the motion for reconsideration that he valued the pension at $16,362. Respondent's counsel informed the court of this disparity during the trial when he attempted to establish the importance of admitting Damisch's testimony as evidence. I believe the trial court abused its discretion in refusing to qualify Damisch as an expert witness. Moreover, I disagree with the majority's reasoning for holding otherwise.

The majority states that "the trial court did not preclude Damisch from testifying as an expert witness because he was not an actuary, as Donald mistakenly argues." The record does not support that statement. At the post-trial hearing the court clearly stated that it precluded Damisch from testifying precisely because he was not an actuary. The trial court repeatedly emphasized that the issue "was he presented him as an actuary and he wanted the court to take him as an actuary *** and it was shown that he was not an actuary."

The majority goes on to say that the trial court found the witness was not properly qualified as an expert in the field of pension funds. Yet at the post-trial hearing, the trial court explicitly denied that the witness was ever offered as an expert on pensions. "If you recall, counsel never said that he wished to qualify him as an expert, therefore, on pensions. He wanted him to be qualified as an actuary which I have no right to do. He wasn't an actuary." The trial court emphasized Damisch's qualifications as an expert on pensions was never raised as an issue. "I am not going into Mr. Damisch's qualifications to render an opinion in regard to a pension fund. That was not the issue. The issue was he presented him as an actuary ***." At trial, however, the court had in fact found that Damisch's credentials and experience failed to establish "the fact [that] he is an expert in pension funds and qualified to give his opinion. *** [H]e has not been shown to be an expert in this field." Because of the trial court's confusion regarding the basis upon which it rejected the testimony, and its indication that it might have ruled otherwise absent that confusion, I find the majority's reasoning to be an improper basis for af-

firming the trial court.

The majority goes on to say that counsel had the opportunity to "further question Damisch and attempt to qualify him as an expert. However, Donald's counsel made no further attempt to qualify the witness. Instead, counsel chose to rest his case." As stated above, I find that no further questions were necessary to qualify the witness as an expert. Moreover, the court could have allowed preliminary cross-examination as to the witness' qualifications if it believed that was necessary. (See *Geving v. Fitzpatrick* (1978), 56 Ill. App. 3d 206, 371 N.E.2d 1228.) Additionally, the record reveals that counsel repeatedly attempted to use Damisch as an expert in pension valuation. The trial court found Damisch was not qualified as an expert but respondent's counsel still asked to "proceed with the examination as to his analysis." The court replied, "But not as an expert." Counsel again asked permission for Damisch to "testify as to his analysis of pension information." The court immediately sustained an objection and said: "I am sure Mr. Damisch understands that I cannot allow him to testify as an expert on pensions. *** He cannot testify as an expert." When counsel asked if the ruling was that an actuary was required, the court replied: "I gave my ruling. I said you have not qualified him to be an expert in pension funds. There has not been a sufficient foundation laid for this court to allow him to testify in this regard. I am not going to keep ruling over and over ***." Counsel persisted: "Then the court is indicating you will not accept any testimony?" The court replied: "[Y]ou did call him as an expert and I don't feel has has been qualified." It was only at that point that counsel conceded that "we cannot proceed at this point." Thus, I disagree with the majority view that respondent merely "chose to rest his case."

The majority also states that counsel "failed to make an offer of proof for the record indicating any other information Damisch could provide regarding his qualifications." Damisch, however, had sufficiently established his qualifications. The majority concludes that "without such an offer, we are unable to ascertain the nature and significance of the excluded testimony." If the majority seeks an offer of proof regarding an expert's qualifications to testify, however, this would have been irrelevant to the substantive "nature and significance of the excluded testimony." And, an offer of proof regarding the excluded testimony, *i.e.*, Damisch's valuation of the pension, would have been irrelevant to the issue of whether Damisch was qualified to testify as an expert.

For these reasons, I believe the trial court committed reversible error in not permitting Damisch to testify as to the value of respond-

ent's pension.

I also find that the trial court committed a gross abuse of its discretion in denying respondent's request for a continuance following his failure to qualify Damisch as an expert witness. On good cause shown, the court has the discretion to grant a continuance on just terms at any time prior to judgment. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1007.) After the cause has been reached for trial, the request for a continuance must be supported by a sufficient excuse for the delay. (87 Ill. 2d R. 231(f).) Respondent here produced an expert witness in good faith. The testimony regarding the valuation of the pension was very important to respondent's case, and to the court's ability to fairly distribute the marital property. This is sufficient excuse for a brief delay. The court should not refuse to grant a continuance where the ends of justice clearly require it. (*Reecy v. Reecy* (1971), 132 Ill. App. 2d 1024, 271 N.E.2d 91.) Here, the ends of justice required a full presentation of evidence regarding the value of the pension. Instead, the court stated that the continuance was not possible because the case was "on trial." This reasoning is weakened considerably by the fact that this bench trial had already been "on trial" intermittently for almost four months. Furthermore, in setting a time for closing arguments the court stated that it left two full days open during the week for this case and that those days would not be needed for the presentation of evidence. At a minimum, the court could have allowed an additional witness to testify on one of those days.

The trial court's abuse of discretion in denying respondent's request for a continuance is further shown by a review of the trial record and the post-trial hearing record. At the post-trial motion hearing, the court explained: "Counsel did not say to this court [at trial], 'Judge, I am being taken by surprise, I am being hurt, may I have a continuance?' *** [H]e never made a record stating that [he wanted] *** another date to bring in an actuary. He never asked me that." These assertions directly contradict the trial record, which shows counsel expressed surprise when he stated: "Well, in light of the court's ruling, obviously, we cannot proceed at this point." Counsel also stated: "[I]t was important for the court to have [the pension valuation] information *** [and] I would request additional time to proceed in this regard."

The majority states that the request was properly denied because respondent's counsel failed to "explicitly advise the court of his reason for a continuance, whether or not he desired to call another expert witness, or the time period he would require to achieve his purpose." A careful review of the record reveals otherwise. Counsel did

in fact specify a "reason for a continuance" when he stated: "[I]t was important for the court to have information regarding the valuation of pensions in this particular case because there is a wide difference in our analysis from the analysis presented by the witness for the petitioner." Thus, the reason for the requested continuance was to allow respondent to present that information regarding the value of the pension, which was a major portion of the marital property to be distributed.

The record shows that counsel advised the court that he "desired to call an expert" when he stated: "[I]t was important for the court to have information *** [and] I would request additional time to proceed in this regard." The court recognized the information to be presented would be in the form of a witness when it replied, "We cannot *** allow you to call more witnesses ***." Clearly, the reason for the requested continuance was to allow time to present a different expert witness.

The record also reveals that counsel's failure to advise the court of "the time period he would need to achieve the purpose" of calling a new witness was solely due to the trial court's immediate and emphatic denial of the request for a continuance. Counsel was not allowed to specify a time period before the trial court denied his request. The court's discretion in granting or denying a request for a continuance should be exercised judiciously and not arbitrarily. (*Bullistron v. Augustana Hospital* (1977), 52 Ill. App. 3d 66, 367 N.E.2d 88.) I also note that when petitioner's counsel here requested additional time to produce an expert for rebuttal, he merely stated that he would offer the testimony "on another day." The court readily agreed to that request without imposing a stringent requirement that counsel specify an exact time period in which he would produce the witness.

For these reasons, I find that the trial court abused its discretion in denying the request for a continuance.

Accordingly, I would affirm the trial court's award of child support. I would reverse the trial court's rulings which found respondent's witness not qualified to testify as an expert and which denied respondent's request for a continuance. I would remand for a proper determination of the distribution of the marital property.